Rosanna C. Moore *et al.,* Appellants, v. D. C. Olive *et al.,* Appellees.

**Payment of Prior Mortgage:** merger: *Foreclosure.* Where the mortgagee purchases the land at his own foreclosure sale, and before deed issues, pays a prior mortgage, and takes an assignment thereof, with the intention that the prior mortgage shall not merge in his title acquired at foreclosure, there will be no merger, as merger is purely a question of intention.

Satisfaction of prior mortgage. Where a mortgagee purchases at his own sale land on which there was a prior mortgage, for the amount of which he allows in making his bid, and, before deed issues, pays off such prior mortgage, and takes an assignment thereof, with the intention of foreclosing it against the mortgagor's homestead, which had not passed to him by sale, such payment of the prior mortgage will operate as a satisfaction thereof and an extinguishment of the debt secured thereby, as the mortgagee merely pays an incumbrance on what is now his own property, and as, moreover, to permit him to keep it alive for the purpose intended would be to countenance a fraud.

*Same.* The purchase of the prior mortgage will operate as a satisfaction thereof and extinguishment of the debt secured, though

the prior mortgage did not cover all of the land on which the junior mortgage was a lien.

Resort to homestead. Land consisting partially of a homestead was covered by two mortgages. The junior mortgagee foreclosed, and bought in the non-homestead property. He then purchased the senior mortgage, and attempted to foreclose it against the homestead. *Held*, that as the senior mortgagee could only have foreclosed against the homestead after exhausting the non-homestead property, and as his assignee took no greater rights than he had, the assignee could not maintain the foreclosure, since, in order to do so, he must first pursue the non-homestead lands, which he had himself already purchased, which would put him in the anomalous position of foreclosing a mortgage against his own property.

*Appeal from Carroll District Court.*—Hon. Z. A. Church, Judge.

Tuesday, October 15, 1901.

Suit in equity to quiet title to certain real estate, and to restrain and enjoin defendants from enforcing a mortgage thereon. Decree for defendants, and plaintiffs appeal. —*Reversed.*

*Geo. W. Paine* for appellants.

*Rose & Henderson* for appellees.

Deemer, J.—Richard C. Moore at one time owned the north half of section 18, township 83, in Greene county. He sold 40 acres off the west side thereof and thereafter executed the following mortgages. May 15, 1886, one to the State Agricultural College, covering the northeast quarter of the section, to secure the sum of $1,600; April 13, 1889, one to Luther Lowell, covering the northwest quarter, less the 40 acres theretofore sold, to secure the sum of $1,500; April 13, 1889, one to Robert L. Pitcher, covering all the land owned by the mortgagee, to secure the sum of $1,000; May 2, 1899, one to defendant Olive, covering all the land, to secure the sum of $681. This

last mortgage was foreclosed in the district court of Greene county, and on February 27, 1894, the land, except the 40 acres selected by Moore as his homestead, and which is the property in dispute, was sold at sheriff's sale (Olive being the purchaser) for the full amount of the .judgment rendered in the foreclosure proceedings, with interest and costs. The land in the northwest fractional quarter was sold subject to the mortgages to Lowell and Pitcher. At the time of the sale Olive owned the Pitcher mortgage, and after the sale, and on the tenth day of April, 1894, he purchased the Lowell mortgage, which, as we have seen, covered the northwest quarter of the section, less the 40 acres previously sold, and also covered the land selected by Moore as his homestead. In due course of time Olive obtained a sheriff's deed to the land purchased by him at the foreclosure sale, which did not include the homestead. After acquiring the deed and the assignment of the Lowell mortgage, he placed the mortgage in the hands of his attorneys, who demanded the payment of the notes secured thereby. This action was commenced to cancel that mortgage in so far as it covered the plaintiff's homestead, on the ground that Olive's purchase at sheriff's sale was subject to the mortgage, and that his purchase thereof merged the mortgage in the legal title held by him to the lands purchased at sheriff's sale. Olive's mortgage covered the whole tract owned by Moore, including the homestead, and the Lowell mortgage covers the west half of the tract, less the 40 acres theretofore sold, including the homestead. It is affirmatively shown that Olive did not intend when he purchased the Lowell mortgage to merge it in the legal title. Indeed at that time all that he held was a sheriff's certificate of sale for the entire tract except the homestead. None of the prior mortgagees were made parties to Olive's foreclosure suit, but the land was sold subject to their mortgages. The Lowell mortgage was signed by Moore and his wife, as also was the one originally made to Olive. It is, of course, conceded that the homestead could not be

sold under either mortgage, except to supply a deficiency remaining after exhausting the other property pledged for the payment of the debt; and it is contended that when Olive purchased at foreclosure sale, subject to the Lowell mortgage, he received the property charged with the payment of that mortgage, and could not thereafter take an assignment thereof and enforce it against the homestead. The Pitcher mortgage held by Olive at the time he instituted his foreclosure proceedings is not involved in this controversy, and we give it no further attention, except to state that it has not been paid, unless the facts above enumerated constitute a payment in law. The mortgage to the Agricultural College is still unpaid. The priorities of these liens will appear in the preceding statement.

Preliminary to a discussion of some of the propositions involved, it may be well to state that merger, as a rule, depends on the intention of the owner, and, if there be no evidence of such intent, equity will not treat a mortgage as merged when it is to the interest of the owner, or those claiming under him, that it should continue in force. *Linscott v. Lamart,* 46 Iowa, 312; *Patterson v. Mills,* 69 Iowa, 755; *Vannice v. Bergen,* 16 Iowa, 555. The doctrine is of equitable origin, and is governed by equitable considerations. In the instant case it clearly appears that Olive did not intend a merger when he purchased the Lowell mortgage. Hence there was no merger, and plaintiffs are not entitled to a decree unless they show that under the facts disclosed by the record the Lowell mortgage should be treated as extinguished by reason of the foreclosure proceedings. It is familiar doctrine that the purchaser of an equity of redemption by deed without covenants takes the estate charged with the payment of mortgage debts, and it is presumed, in the absence of any special contract, that the amount paid or agreed to be paid was the value of the property, less the amount of the incumbrances, and it is for the purchaser, and not the seller, to discharge these liens. *Iowa L. & Trust*

*Co. v. Mowery,* 67 Iowa, 113; *Clift v. White,* 12 N. Y. 534; *Sweetzer v. Jones,* 35 Vt. 317 (82 Am. Dec. 639); *Guernsey v. Kendall,* 55 Vt. 201; *Tice v. Annin,* 2 John. Ch. 125. This same rule has been applied to purchasers at execution and foreclosure sales. *Wade v. Howard,* 6 Pick. 492; *Bunch v. Grave,* 111 Ind. Sup. 351 (12 N. E. Rep. 514); *Shuler v. Hardin,* 25 Ind. 386; *Atherton v. Toney,* 43 Ind. 211. In such cases the premises in the hands of the purchasers are primarily liable for the payment of the mortgage debt, and the judgment debtor is neither legally nor equitably bound to pay off the prior mortgage for the benefit of the purchaser. *Russell v. Allen,* 10 Paige, 249. Where land is purchased subject to a mortgage, the purchaser is not personally liable for the mortgage debt, but it remains as an incumbrance on the estate. Jones, Mortgages, section 738. After having paid these debts, a court of equity will not aid him in recovering back the money paid. In such a case as this the foreclosure proceedings would be entirely ignored, and the parties would stand in the same relation as if no foreclosure had been had. A purchaser under foreclosure of a second mortgage secures nothing but the interest of the mortgagor, and he cannot, by taking an assignment of the first mortgage, set it up as a source of title, or enforce it against the original mortgagor. To suffer the purchaser to retain possession and title of the premises under a foreclosure and a sale of the second mortgage subject to the first, and then to acquire title to the first mortgage, which he had covenanted to respect, would be to sanction a palpable fraud. While not personally bound to pay the first mortgage, he acquires property with which to pay it, and in satisfying the debt he is doing no more than his duty. Having paid the obligation for which his property was bound, he is not entitled to be subrogated to the rights of the original mortgagee as against the mortgagor. It was entirely optional with Olive to redeem or not from the Lowell mortgage, which was prior to his own. But, hav-

ing redeemed, a court of equity will not aid him in re-
covering back the money paid. In *Fuller v. Hunt,* 48 Iowa,
167 it is said: "Where land is purchased subject to a mortgage
supposed to be valid, whether it is so or not, the mortgaged
land becomes the primary fund for the discharge of the
mortgage debt. The theory is that the amount of the mort-
gage is deducted from the purchase money, and it would be
inequitable to allow the purchaser to take advantage of the
invalidity of the mortgage, and cast the debt upon the ven-
dor, who had virtually furnished the consideration for its
discharge. Nor is it necessary, in order that the land may
stand primarily charged with the payment of the mortgage
debt, that the purchaser from the mortgagor should have
assumed its payment. It is sufficient if the land was pur-
chased subject to the mortgage, without any personal lia-
bility being assumed by the purchaser." See, also, *Green
v. Turner*, 38 Iowa, 112. In the latter case it is ' said:
"Plaintiff, being a purchaser at sheriff's sale, stands in no
other or more favorable position than a grantee by volun-
tary sale. The amount bid will be presumed to be the price
or value of the property, less the incumbrance." *Crowley
v. Harader,* 69 Iowa, 83. In *Price v. Rea,* 92 Iowa, 12,
land was conveyed subject to incumbrances. Thereafter the
purchaser took an assignment of some of the prior liens,
and brought suit to enforce them against sureties. Held,
that he could not recover. This was on the theory that the
land was the primary fund out of which the incumbrances
should be paid. That case cites with approval *Bunch v.
Grave, supra,* which is almost directly in point, and a con-
clusive answer to most of the points made by the
appellee. Appellee contends, however, that as the
first mortgage, which was assigned to him, did not
cover all the land described in the mortgage which he fore-
closed, the foregoing rules do not apply. There is no merit
in this contention. *Johnson v. Walter,* 60 Iowa, 318. True,
in that case the purchaser assumed the prior mortgage, but
that fact does not affect the principle of law established.

Claim is also made that, as Olive did not acquire title to the homestead 40 acres under his foreclosure, he may enforce the mortgage assigned to him against that land. There are two answers to this contention: First. He was content to bid off the land acquired by him under the sheriff's deed, subject to the mortgages existing against it, for a specified sum. This bid was with knowledge of the right of the mortgagor to have the property not homestead in character first sold under the senior mortgage, before resort could be had to the homestead. The land not homestead in character was primarily liable for the Lowell indebtedness. Olive knew this when he purchased, and must be held to have made his bid with reference thereto. He acquired under his foreclosure the same rights as his mortgagor held, and no more. He knew that Lowell could not resort to the homestead until he had exhausted the other land, and must have regulated his bid accordingly. That is to say, in fixing the amount of his bid he must have taken into account the fact that the Lowell mortgage was a primary lien on all property covered thereby not homestead in character, and should be resorted to before the homestead could be taken. Second. Olive has already acquired title to all the property covered by the Lowell mortgage not homestead in character, in virtue of his foreclosure proceedings, and it would be a palpable fraud to permit him to enforce that mortgage against the homestead alone. This he must do, or else he must assume the anomalous position of foreclosing a mortgage against his own property before resorting to the homestead. The ready answer to all these contentions is that in purchasing subject to the Lowell mortgage the land was in effect pledged to its payment. Olive was not required to pay the mortgage unless he saw fit to do so. But when he did pay it he was simply relieving his land from a charge against it, and he cannot pay it, and at the same time keep it alive by an assignment of the security. The fact that the land in controversy is homestead in character is of

controlling importance.  The policy of the law is to protect such estates, and courts will not allow them to be sacrificed in any such manner as is attempted in this case.

Appellee makes some question regarding what is meant by equity of redemption, and cites definitions showing that it has a different significance from that given in this opinion.  The settled rule of law seems to be that a purchaser from a mortgagor acquires nothing more than the equity of redemption.  At least, that is the sense in which the term is used in this state.  *Trucks v. Lindsay,* 18 Iowa, 504.  It differs from the common-law equity of redemption, in that it inheres in every mortgage, and is subject to sale or mortgage, may be devised, and passes to the owner's heirs.  Whether or not Olive has any right or equities as against the mortgage to the Agricultural College, we have no occasion to determine.  But between him and the mortgagor, Moore, the Lowell mortgage is canceled.  Our conclusions find support in *McDonald v. Magirl,* 97 Iowa, 79, and cases cited.

The trial court should have granted the relief asked, and the cause is remanded for that purpose.—REVERSED.