GEORGE H. DOWNING, APPELLEE, v. CHARLES D. HARTS-
HORN ET AL., APPELLANTS.

FILED JUNE 3, 1903. No. 12,856.

1. **Homestead in Life Estate.** A wife may claim a homestead in a life estate held by her husband.

2. **Right of Tenant for Life Who Has Paid Mortgage.** Where a tenant for life pays off a mortgage or other charge upon the entire estate, he is presumed to do so for his own benefit, and may preserve and enforce the lien for reimbursement over and above the proportion of the debt which he is bound to contribute.

3. **Reimbursement and Contribution:** ASSIGNMENT CREATES NEW LIEN. But his right to preserve and enforce the lien exists for the purpose of reimbursement or contribution only; so far as his estate or interest is concerned, in the absence of intervening interests or other special circumstances making such result inequitable, the lien is extinguished, and a subsequent assignment of the whole charge is, in substance, the creation of a new incumbrance thereon.

4. **Mortgage Kept Alive by Assignment.** The mortgage or other charge upon the entire estate may be kept alive as to the individual estate or interest of the person paying it off, by taking an assignment.

5. **Where Preservation of Lien Operates Fraudulently.** If in such case, however, the preservation of the lien as to such estate or interest would operate fraudulently or inequitably, it will not be permitted, and the lien will be deemed extinguished so far as it covered and to the proportion chargeable upon the individual estate or interest of the person paying it off.

6. **Mortgage: HOMESTEAD.** A husband, holding a life estate in property of a former wife, married again and continued to occupy it as a homestead. The property was subject to a mortgage, which he paid, taking an assignment. Afterwards he reassigned the mortgage to the plaintiff, as security for a new debt. His wife did not join in the assignment. *Held,* That this amounted to an incumbrance of the homestead, and that the mortgage was not enforceable, as against the life estate.

7. **Tenant for Life: ADVERSE TITLE.** The rule that a tenant for life who buys in an outstanding incumbrance is regarded as holding it for the benefit of the reversioner as well as for his own benefit, means only that he will not be permitted to acquire an adverse title by or through such purchase or otherwise cut out the reversioner's right of contribution without affording the latter an opportunity to redeem.

8. **Assignment of Mortgage by Life Tenant: FORECLOSURE.** Hence it will not operate to prevent assignment of the incumbrance to a third person and a foreclosure suit by the latter to require the reversioner to redeem to the extent of his proportion and to subject the property to satisfaction of the incumbrance in default thereof.

APPEAL from the district court for Buffalo county: HOMER M. SULLIVAN, DISTRICT JUDGE. *Reversed with instructions.*

*Hector M. Sinclair* and *James M. Easterling,* for appellants.

*E. C. Calkins, contra.*

POUND, C.

James H. Bock holds a life estate in the property in controversy as surviving husband of Bertha E. Bock, deceased, the property being a homestead. After her death, he continued to reside upon the property with three minor children, who are entitled to the reversion under the statute. He has since married the defendant Jennie Bock,

and she has lived upon the property from the date of the marriage. At the time the title was acquired by his first wife, it was subject to a mortgage executed by her grantors. Sometime subsequent to his second marriage, he paid the remainder due upon the mortgage and took an assignment thereof. Three years later, he borrowed money of the plaintiff and assigned the mortgage and the note thereby secured as security for the new loan. The present suit is brought to foreclose the mortgage.

It is clear that the defendant Jennie Bock was, at the time the mortgage was assigned to the plaintiff, and still is, entitled to claim a homestead in the life estate held by her husband. *Dennis v. Omaha Nat. Bank,* 19 Neb. 675; *Giles v. Miller,* 36 Neb. 346; *Kendall v. Powers,* 96 Mo. 142, 8 S. W. 793; *Deere v. Chapman,* 25 Ill. 610; *Beranek v. Beranek,* 113 Wis. 272, 89 N. W. 146. The question arises at once, therefore, whether the reassignment to plaintiff amounted to an incumbrance of the homestead within the purview of section 4, chapter 36, Compiled Statutes (Annotated Statutes, 6203), as, if such is the case, the mortgage is not enforceable, as against the life estate, for the reason that the defendant Jennie Bock did not join in such assignment. It is undoubtedly a general rule that where a tenant for life pays off a mortgage or other charge upon the entire estate, he is presumed to do so for his own benefit, and may preserve and enforce the lien for reimbursement over and above the proportion of the debt which he is bound to contribute. Equity will prevent a merger in such cases, in furtherance of the intention of the person who pays off the mortgage, and will presume an intention to preserve the lien, where manifestly for his benefit and advantage, although he may, in form, have discharged it. 2 Pomeroy, Equity Jurisprudence, sec. 799. But his right to preserve and enforce the lien exists for the purpose of reimbursement or contribution only. He can not, in the absence of intervening interests or other special circumstances requiring that the lien be kept in force, assert it generally as a charge upon the

whole estate, including his estate for life, especially where
the result would be unjust or inequitable. In such cases,
he has no legitimate interest in keeping it alive.

"When the estate has no connection with other interests,
what motive can a man have, who owns the equity of re-
demption, and purchases in a subsisting mortgage, to keep
this mortgage alive in his own hands, against his own
estate?   *   *   *   It could not be of any use but a mis-
chievous one, as against subsequent purchasers or encum-
brancers, and for such a purpose, the merger is not to be
prevented, nor the charge upheld by the aid of this court."
*Starr v. Ellis,* 6 Johns. Ch. (N. Y.) *393. He will not
even be allowed to keep it alive for the sole purpose of
throwing the whole burden upon the reversioner, taking
an assignment and keeping it outstanding during the con-
tinuance of his estate. *Lamson v. Drake,* 105 Mass. 564.
So far as his estate or interest is concerned, in the
absence of intervening interests or other special circum-
stances making such result inequitable, the lien is ex-
tinguished. *Singleton v. Singleton,* 60 S. Car. 216, 38 S.
E. 462; *Miller v. Miller,* 22 Misc. Rep. (N. Y.) 582, 49 N.
Y. Supp. 407.

"A court of equity will keep an incumbrance alive or
consider it extinguished, as will best serve the purposes
of justice and the actual and just intention of the party.
The intention, however, must be innocent, and injurious
to no one." *Andrus v. Vreeland,* 29 N. J. Eq. 394. In
the case at bar, to keep the lien alive, as to the life estate of
the husband, could not fail to operate injuriously to the
wife, and the sole interest which the husband could have
had in preserving the charge for any purpose beyond reim-
bursement out of the reversion for the proportion justly
chargeable thereon, was to enable him to borrow money
upon his life estate and pledge it for payment thereof,
without his wife's concurrence and in fraud of her home-
stead rights. An intention to prevent merger for such a
purpose will not be countenanced in a court of equity.
Equity will look at the substance, rather than the form;

and, in substance, the subsequent assignment of the whole charge is the creation of a new incumbrance upon the life estate. No refinements of equity will be permitted to circumvent the express and salutary requirement that the wife must concur in the incumbrance of the homestead. *Jenkins v. Simmons,* 37 Kan. 496, 15 Pac. 522; *Campbell v. Babcock,* 27 Wis. 512; *Spencer v. Fredendall,* 15 Wis. *666; *Barber v. Babel,* 36 Cal. 11. In several of these cases the very doctrine that equity will prevent a merger, relied upon in the case at bar, was urged as a ground for enabling the husband, acting alone, to revive or reissue an incumbrance upon the homestead which he had paid.

But counsel contend that a distinction is to be made in the case at bar by reason of the fact that the husband took an assignment at the time he paid the mortgage debt. They say:

"Where he takes an assignment, it does not merge in any degree, but remains as distinct as if it was in the hands of the assignor, or as it might have been in the hands of the assignee, had he no other interest in the property."

Taking an assignment is merely evidence of the intention with which the incumbrance was paid. It is not the assignment, but the intention and the interest of the party, which prevents merger. If one pays off a mortgage or other charge upon his own estate, or upon the entire estate for the protection of his individual estate or interest, he may often keep the charge alive, as to such individual estate or interest, by taking an assignment which makes his intention manifest. But if the preservation of the lien as to such estate or interest would operate fraudulently or inequitably, it will not be permitted, and the lien will be deemed extinguished, so far as it covered, and to the proportion chargeable upon, the individual estate or interest of the person paying it off, notwithstanding the assignment. *Atherton v. Toney,* 43 Ind. 211; *Moore v. Olive,* 114 Ia. 650, 87 N. W. 720; *Frey v. Vanderhoof,* 15 Wis. 397. In *Atherton v. Toney, supra,* the court said:

"To allow the appellee, Toney, to buy in the outstanding obligation, to secure which the mortgage was given, and use it as a set-off against a note given for the purchase money, would enable him to hold the whole interest in the land, when he purchased only the equity of redemption. It would give him the benefit of a covenant against incumbrances when none was made. It would enable a purchaser of an equity of redemption on a credit, at a price equal to an outstanding mortgage given to secure a note * * * of the seller, to defeat the collection of the purchase-money by buying up and taking an assignment of the debt and using it as a set-off, and thus secure the property at one-half of the purchase-price. That would not be for an innocent purpose."

However convenient it might sometimes be for husbands, and however much they might deem it to their interest, to be able, when once the homestead had become subject to an incumbrance, to take an assignment upon payment thereof and revive the incumbrance, as their debts or future necessities might require, without the necessity of consulting their wives, a court of equity cannot be asked to sanction such proceedings. We think, therefore, that the assignment of the mortgage to the plaintiff was ineffectual, as to the life estate of the husband, and that the mortgage is not enforceable against that estate.

A further question is raised, how far the mortgage is enforceable in this suit as against the holders of the reversion, who are infants. It is urged, on their behalf, that when their father, who was tenant for life, paid off the outstanding incumbrance, he must be held to have done so, and to have held it, for the benefit of the reversioners as well as for his own benefit, and that they were entitled to an election whether to contribute the proportion justly chargeable upon the reversion, before the tenant for life could make use of the incumbrance for his own purposes. It is urged also that the reversioners, being infants, have not had this election afforded them. But we think the

27

rule that a tenant for life who buys in an outstanding incumbrance is regarded as holding it for the benefit of the reversioner as well as for his own benefit, means only that he will not be permitted to acquire an adverse title by or through such purchase, or otherwise cut out the reversioner's right of contribution, without affording the latter an opportunity to redeem. Where the mortgagee has the legal title and the mortgagor only an equity of redemption, a tenant for life who acquires the mortagee's title and claims possession under it is misusing his possession. If in any other way he takes advantage of his possession and of his purchase of the outstanding incumbrance to obtain an adverse title, he is abusing the advantage which his possession gives him. In such cases, equity requires him to hold the new title for the benefit of the reversioner, and the latter may sue to establish the trust and to be permitted to redeem. The tenant for life, in the case at bar, had the right to be reimbursed, out of the reversion, for the proportion of the amount paid in discharging the incumbrance which was justly chargeable upon the reversion. For that purpose, the mortgage, in his hands, was still a lien. He could have brought suit to enforce this lien by compelling the reversioners to redeem and subject the property to payment of the charge if they did not. This right he assigned to the plaintiff, and we think the latter may foreclose, as against the reversion, for the proportion for which it is liable.

It is urged also that an admission that no proceedings at law had been had for collection of the claim secured by the mortgage was not binding upon the infant defendants. But we need not examine this matter, as there must be a further hearing, and additional findings, and the question is not likely to arise again.

We recommend that the decree be reversed and the cause remanded with directions to find the proportion of the incumbrance paid off by James H. Bock which is justly chargeable upon the reversion, to enter decree of foreclosure against the defendants Royal Bock and James

Bock, Jr., therefor, and to dismiss the petition as to the defendants James H. Bock and Jennie Bock.

DUFFIE and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed, and the cause is remanded with directions to find the proportion of the incumbrance paid off by James H. Bock which is justly chargeable upon the reversion, to enter judgment of foreclosure against the defendants Royal Bock and James Bock, Jr., therefor, and to dismiss the petition as to the defendants James H. Bock and Jennie Bock.

REVERSED WITH INSTRUCTIONS.