DETROIT & NORTHERN MICHIGAN BUILDING & LOAN
ASSOCIATION v. ORAM.

1. SUBROGATION—MISTAKE OF FACT—INTENT—EVIDENCE—FINDING
OF COURT—MORTGAGES—GIFTS.

Where decedent had only a life estate in land devised to her
by her husband subject to a mortgage of $5,500, which she,
with money from her separate estate, reduced to $3,000,
and later executed a new mortgage paying the first one in
full, evidence *held*, to sustain the finding of the lower
court that decedent acted under a mistake of fact that she
was the owner of the fee, and not with the intention of
making a gift to the remainderman.

2. SAME—EXECUTORS AND ADMINISTRATORS — INTERVENERS — STAT-
UTES—MORTGAGES.

In equity proceedings by the mortgagee in the second mort-
gage to revive the first mortgage and subrogate it to the
rights of the mortgagee therein, the executor of decedent's
estate had such interest in the litigation as to entitle him
to intervene under section 12362, 3 Comp. Laws 1915.

3. SAME—LIFE TENANT—MORTGAGES, DUTY OF REMAINDERMAN TO
PAY.

The rule is well settled that though a life tenant is under
no obligation to pay off the principal of an incumbrance,
even to prevent a foreclosure sale, yet if he does so, he is
entitled to call upon the remainderman for contribution,
and has a lien on the property for the amount due; and
that the amount for which the remainderman is liable is
the amount paid less the amount of interest which would
have been payable by the life tenant.

4. SAME—LIFE TENANT—VOLUNTARY PAYMENT—LIEN.

While a life tenant cannot claim a lien for payments made
voluntarily, with no purpose to bind the remainderman,
payments made in ignorance of the real facts cannot be
said to be voluntary.

5. SAME—MISTAKE OF FACT—EQUITY—JURISDICTION.

That the inequalities resulting from a clear mistake of fact,
one of the fundamental grounds of equity jurisdiction,
may be remedied by subrogation, is well supported by pre-
cedents.

6. Same—Mortgages—Payment—Demand—Presumptions.

Where the life tenant paid a mortgage which was long overdue, in the absence of direct proof of an agreement to extend, the presumption would be that payment was demanded.

7. Same—Mistake of Fact—Equity.

When the basis for subrogation is payment under a mistake of fact, usually the only essential questions are the right to pay and whether there are any intervening equities that will be prejudiced by allowing subrogation.

8. Same—Mortgages—Payment by Life Tenant—Remainderman.

Where the life tenant paid $2,500 on the original mortgage, then overdue, under a mistake of fact that she was the owner of the fee of the premises, and there are no intervening equities that can be prejudiced, she should, to the extent of such payment, deducting interest for the duration of her life tenancy, be subrogated to the rights of the original mortgagee, as against the remaindermen, since the latter would have been bound to pay the mortgage to protect his estate.

9. Same—Mistake of Fact—Lien of Mortgagee.

Plaintiff, having loaned a sum of money for the express purpose of paying a prior incumbrance on the land taken as security for such loan under a mistake of fact whereby the mortgage became defective, and there being no intervening incumbrances or equities, is entitled to be subrogated to the lien of the incumbrance so discharged, to the extent of the amount paid.

10. Same.

Where the second mortgage given to plaintiff was for a larger amount than the remaining incumbrance, and decedent, who was personally liable on the note and mortgage, received the benefit over and above the amount required to pay said incumbrance, her executor having intervened, equity will give plaintiff a lien on the amount to which decedent was entitled to be subrogated to pay the balance due on plaintiff's mortgage over and above the amount to which it is entitled to be subrogated.

11. Same—Mortgages—Right to Foreclose.

Plaintiff and intervener, as the equitable assignees of the original mortgage, should have the right to foreclose the same to enforce payment.

Appeal from Houghton; O'Brien, J. Submitted January 18, 1918. (Docket No. 150.) Decided March 27, 1918. Rehearing denied June 20, 1918.

Bill by the Detroit & Northern Michigan Building & Loan Association against Minnie K. Oram and others to set aside the discharge of a mortgage, for subrogation to the rights of the mortgagee, and to foreclose the same. Joseph Strobel, executor of the will of Elizabeth Kaspers-Gitzen, intervened claiming equities. From a decree for plaintiff and the intervener, defendants appeal. Affirmed.

*Hanchette & Lawton,* for plaintiff and intervener.

*J. F. Hambitzer,* for defendants.

KUHN, J. John Kaspers in his lifetime was a resident of the village of Houghton and owned a corner lot on the main street of the village, in the business district, on which stood a two-story store building and other adjoining structures. He died July 23, 1903, leaving a will which gave a life estate in this property to his wife, Elizabeth, with remainder to his son, Gabriel. At the time of his death there was a mortgage of $5,500 on this land, held by one Elizabeth Hennes, then by its terms overdue. In the inventory of his estate this piece of real estate was appraised at $12,500, subject to a mortgage of $5,500. Some time in the following year the son, Gabriel, died, leaving a widow, Minnie, and a young child, Joseph Gabriel Kaspers. In 1906, Mrs. Elizabeth Kaspers sold a certain property in Hurontown belonging to her as part of her separate estate, and out of the proceeds paid Mrs. Hennes $2,500 on account of the principal of the above mentioned mortgage. In January, 1909, she legally adopted her grandson, Joseph Gabriel Kaspers, and a few days later, at the age of 67, married

one Joseph Gitzen of Houghton, then about 65 years of age.

On July 21, 1912, a transaction was completed whereby the plaintiff Detroit & Northern Michigan Building & Loan Association loaned to said Elizabeth Kaspers-Gitzen the sum of $4,500 on the security of a mortgage covering the Houghton store property above mentioned, signed by Mrs. Gitzen alone, and at her request applied $3,000 of this loan to paying the balance of principal and obtaining a discharge of the Hennes mortgage on said property, the remaining $1,-500 being paid over to Mrs. Gitzen. Before making this loan, the plaintiff had an abstract of title prepared by the register of deeds, who certified that the title to the property in question was in Mrs. Gitzen. Later the loan was increased, and in this transaction the $4,500 mortgage was discharged and a new mortgage for $4,800 given, the register of deeds again certifying as before with reference to the title. This mortgage was payable in installments, so that if the payments were regularly made it would be paid in full in 11 or 12 years. In 1914, Mrs. Gitzen sold another piece of property belonging to her separate estate—this one in West Houghton—and from the proceeds paid $800 on account of her mortgage to plaintiff. Mrs. Gitzen died February 25, 1915, possessed of practically no estate except her interest in this store property, but made a will in which, after a bequest of $500, she gave a life estate in her property to her husband, Joseph Gitzen, with remainder to her adopted son (her grandson), Joseph Gabriel Kaspers. Shortly afterwards the boy was adopted by his own mother and her second husband, Minnie Kaspers-Oram and John Oram.

After the death of Mrs. Gitzen, plaintiff discovered that the abstracter had made a mistake in the abstract of the mortgaged property in question, and that Mrs.

Gitzen, instead of being the owner of the fee, had only a life estate. Plaintiff thereupon filed a bill against Minnie Kaspers-Oram and Joseph Kaspers-Oram, the heirs of Gabriel Kaspers, the remainderman under the will of John Kaspers, deceased, claiming a mistake of fact, and asking that the discharge of the Elizabeth Hennes mortgage be set aside and the mortgage revived and that plaintiff be decreed to be the equitable assignee thereof and subrogated to the rights of Elizabeth Hennes therein, and praying for the foreclosure of said mortgage.

After the hearing of the case had begun and a portion of the testimony had been taken, Joseph Strobel, executor of the will of Elizabeth Kaspers-Gitzen, filed a petition or bill for intervention in said cause, setting up the fact of the payment by Mrs. Gitzen of the $2,500 on account of the Hennes mortgage, which fact was not alleged in the original bill, and praying that she be subrogated to the Hennes mortgage for the amount of this payment, or at least for so much of said amount as might remain after the balance due to the plaintiff had been satisfied. The intervention was allowed by the court below.

The defendants denied the right of plaintiff to the relief prayed for, contested the right of the executor to intervene and also denied that he was entitled to the relief sought by him. They denied that Mrs. Gitzen, in her dealings with the property in question, believed that she was the owner of the fee thereof, or that she intended to claim or have any lien for the $2,500 paid by her on the mortgage, or that there was any necessity for the payment of the Hennes mortgage, but claimed that the partial payment of $2,500 by Mrs. Gitzen was a voluntary payment in the nature of a gift, with the purpose and intent to reduce the incumbrance for the benefit of her grandson, one of the remaindermen; further, that Mr. Gitzen, after her

marriage, dominated her. and induced her to waste her property for his benefit, and that the sole purpose of the transaction with plaintiff was to obtain $1,500 to spend, and the sole reason for the discharge of the Hennes mortgage was that plaintiff would not take a second mortgage on the property, but insisted on combining the loans and taking a first mortgage for the entire amount. They claimed this latter transaction was neither necessary nor for the benefit of the remainderman, but was a mere voluntary payment.

As bearing on these claims, considerable testimony was admitted by the court, and after hearing all this testimony, the learned trial judge was clearly impressed that Mrs. Gitzen had acted in entire good faith in these transactions under the mistaken belief that she owned the fee of the property. Referring to the payment of the balance of the Hennes mortgage, he said:

"It is quite evident from all the testimony that this payment was made by Mrs. Gitzen under the impression that she was the sole owner of the premises."

The court granted a decree, reviving the Elizabeth Hennes mortgage for $5,500 for the benefit of the plaintiff and the intervener, subrogating plaintiff and intervener to the rights of Elizabeth Hennes in and to the mortgage, granting priority to plaintiff's lien over that of intervener, fixing the amount of plaintiff's lien at $3,700.72, with interest at 7 per cent. from the date of Mrs. Gitzen's death, the intervener's lien to be for the residue; decreeing plaintiff and the intervener to be the equitable assignees of said mortgage, with right to foreclose the same, and fixing the amount due under the mortgage at $5,500 with interest thereon at 7 per cent. from the date of Mrs. Gitzen's death.

An appeal having been taken from this decree, appellants' counsel, at the outset of his argument, in his brief, renews his contention that Mrs. Gitzen acted

with full knowledge of the true state of the title to the property in question. While it is impossible, within the purview of this opinion, to review the testimony upon this question, which was introduced on the hearing below, after a careful study thereof we are impressed that the circuit judge was clearly right in his conclusion that Mrs. Gitzen believed that she was the sole owner of the premises. Her adopting her grandson to make him her heir, her inducing Mr. Gitzen to distribute his own property among his children before the marriage, her applying all the proceeds of the sales of her individual property that she could spare to the reduction of the incumbrance on this store property, the money, and labor contributed by herself and Mr. Gitzen towards improving the buildings, her making a will, after she had thus spent all her own sole and separate estate, in which she evidently sincerely believed she was fulfilling her long cherished purpose of leaving a substantial and profitable inheritance to her grandchild—in short, her whole course of action cannot be reasonably explained or rendered consistent on any other theory than that she believed the store property had passed to her absolutely under her husband's will and that she was dealing with and disposing of her own. The testimony of defendants' witnesses as to her statements, it seems to us, supports this theory far more strongly than it does that of the defense.

1. Before passing to the consideration of the question of plaintiff's and intervener's respective rights of subrogation, a preliminary question demands consideration. Had the executor of the will of Mrs. Gitzen a right to intervene in these proceedings?

A rule as to intervention was incorporated in the judicature act (Act No. 314, Pub. Acts 1915), appearing as section 11 of chap. 12 (§ 12362, 3 Comp. Laws 1915), which reads as follows:

"In an action either at law, or in equity, anyone claiming an interest in the litigation may, at any time, be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of the propriety of the main proceeding."

This act, by its terms, is declared to be remedial and, as such, entitled to a liberal construction to effectuate the intents and purposes thereof. The section in question has already had the consideration of this court in *Weatherby* v. *Kent Circuit Judge*, 194 Mich. 46, and *McMillan* v. *School District, ante*, 280.

We think it can fairly be said that the intervener herein is asserting "a claim to, or lien upon, the property, or some part thereof, which is the subject of litigation," and also has an interest in the litigation "of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment." See opinion of Field, J., in *Horn* v. *Water Co.*, 13 Cal. 62, cited with approval in *Smith* v. *Gale*, 144 U. S. 509. A mortgage, discharged of record, is sought to be revived and declared a lien on real estate to the extent of plaintiff's claim. The intervener seeks to have it declared a lien for the full face amount thereof in order also to secure the claim of his testatrix. Both claims arose out of a mistake concerning the same fact, viz., the ownership of the property which furnished the basis of, and supposed security for, their respective payments of money. Moreover, the plaintiff holds a note and mortgage given by intervener's testatrix which is a claim against her estate, and whatever plaintiff is able to realize out of his subrogation to the Hennes mortgage will reduce to that extent the amount of the indebtedness of the estate of intervener's testatrix. We think, therefore, that the intervention was properly allowed.

2. Is the executor of Mrs. Gitzen's will, by reason of the payment by her of $2,500 on account of the

Hennes mortgage, entitled either to a lien for that amount on the store property as against the remainderman, or to be subrogated *pro tanto* to the Hennes mortgage?

The rule is well settled that though a life tenant is under no obligation to pay off the principal of an incumbrance, even to prevent a foreclosure sale, yet if he does so, he is entitled to call upon the remainderman for contribution, and has a lien on the property for the amount due; and that the amount for which the remainderman is liable is the amount paid less the amount of interest which would have been payable by the life tenant. See 16 Cyc. pp. 635, 636; 1 Washburn on Real Property (5th Ed.), p. 129, § 25; *Whitney* v. *Salter*, 36 Minn. 103; *Downing* v. *Hartshorn*, 69 Neb. 364; *Engel* v. *Ladewig*, 153 Mich. 8; *Damm* v. *Damm*, 109 Mich. 619; *Hodges* v. *Phinney*, 106 Mich. 537. And while it is true that a life tenant cannot claim a lien for payments made voluntarily with no purpose to bind the remainderman, yet it is also clear that payments made in ignorance of the real state of facts cannot be said to be voluntary.

This case presents more than the ordinary instance of a payment by a life tenant of an incumbrance. A clear mistake of fact, one of the fundamental grounds of equity jurisdiction, is also involved, and the proposition that inequities resulting from such a mistake as the one in question may be remedied by subrogation is well supported by precedents. In 37 Cyc. pp. 444, 445, it is said:

"Where a person in good faith assumes and pays an encumbrance on land, to which he has no title, but believes in good faith that he is the owner, he becomes the equitable owner of the encumbrance, and the same constitutes a lien on the land; and one who at the time of paying the mortgage debt erroneously believes himself the owner of the property, while in fact the record shows him entitled to but a life estate, is nevertheless

entitled to subrogation against the remainderman to the extent to which such remainderman was bound to pay the mortgage to protect his estate."

In *Taylor* v. *Roniger,* 147 Mich. 99, Mr. Justice McALVAY said:

"Complainant purchased the land for $300 cash, understanding that he was obtaining the title in fee subject to the incumbrance. He paid the mortgage thinking he was relieving his own land from the incumbrance, and having paid the mortgage upon the land which in fact he did not own, became its equitable owner, and entitled to be so considered and to have the same declared to be a subsisting lien upon the land."

In *Wilder* v. *Wilder,* 75 Vt. 178, Mr. Wilder, upon the death of his wife, took a life estate in certain real estate belonging to her and occupied as a homestead, while the fee vested in their son in remainder. Mr. Wilder, believing he owned the fee of the property, paid off a mortgage thereon. He further undertook to dispose of the land by his will, one-half to his second wife and one-half to trustees for his son. After his death, the mistake was discovered, and his executrix filed a bill, asking to be subrogated to the rights of the mortgagee under the mortgage so paid. The court granted the relief, saying:

"The fact that he supposed that he held the title to the premises in fee, and made the payment under such belief, did not disentitle him to assert his right as life tenant paying off the incumbrance, to be subrogated to the rights of the mortgagee, to the extent the remainderman was bound to pay to protect his estate. His relation to the estate was such that payment of the mortgage debt by him, without proof of an intention to keep the mortgage on foot, entitled him to be subrogated to the rights of the mortgagee, to the extent we have indicated; and that right may be enforced by the oratrix" (the executrix of his will).

In *Stroh* v. *O'Hearn,* 176 Mich. 164, among other

complications, certain parties became possessed of life estates under the mistaken, but *bona fide* belief that they owned the fee. In discussing the question of their rights, Mr. Justice STEERE, speaking for this court, said:

"While it was the duty of the remaindermen to prevent foreclosure and save the property, if the life tenants, being under no obligation to do so beyond paying interest, did pay the incumbrances, they would be entitled to call upon the remaindermen for contribution, and would have a lien upon the property for the amount so paid, less interest on the principal of the indebtedness, to be computed against them during the continuance of their life estate."

And again:

"Bauman, having paid the mortgage, or any other lien, on the 60 acres he held as a life tenant, would himself have a lien thereon for the amount paid, deducting interest computed for the estimated duration of his life tenancy."

Considerable argument has been made as to the purpose and intent of Mrs. Gitzen in making the $2,-500 payment, and emphasis has been laid on the fact that Mrs. Hennes was a friendly mortgagee, willing to let the mortgage run, and that payment under such circumstances was mere meddling and could not be held to constitute anything but a voluntary payment. But it must be remembered that the mortgage was long overdue, and in the absence of direct proof of an agreement to extend, the presumption would be that payment was demanded, and further, that the payment was made under a mistake of fact, which removes from consideration any possibility of the same being voluntary. When the basis for subrogation is payment under mistake of fact, usually the only essential questions are the right to pay and whether there are any intervening equities that will be prejudiced by allowing subrogation.

Having made the payment of $2,500 on the original mortgage, then overdue, under the erroneous belief that she was the owner of the fee of the premises, when in fact she had but a life estate, and there being no intervening equities that can be prejudiced, Mrs. Gitzen should, to the extent of such payment, deducting interest for the duration of her life tenancy, be subrogated to the rights of the original mortgagee, as against the remaindermen, since the latter would have been bound to pay the mortgage to protect their estate.

3. Is the plaintiff entitled to subrogation to the rights of Mrs. Hennes under her mortgage by reason of loaning $3,000 to pay the balance of principal of said mortgage under mistake of fact as to the title of the property in question taken as security?

In 37 Cyc. pp. 462, 463, it is said:

"Where an invalid or defective mortgage is given to secure an advancement of money made for the express purpose of paying off a prior encumbrance, the mortgagee in the defective mortgage will be subrogated to the lien of the encumbrance so discharged, in the absence of intervening encumbrances, and mere constructive notice of the invalidity based upon a presumption of knowledge of the law, or upon the recording acts, is not sufficient to prevent the right from attaching if the mortgagee did not have actual knowledge, and the failure of actual knowledge was not *mala fides*."

In *Sproal* v. *Larsen*, 138 Mich. 142, Mr. Justice CARPENTER said:

"There was presented to complainant's attorney an abstract brought down to February 17, 1891, showing title in defendant Augusta. Complainant was led to believe, and did believe, that that title continued in her. He thereupon advanced the money required to pay the money secured by the Gary mortgage, which was accordingly paid, and he obtained a new mortgage on said property, signed by defendant Augusta and her husband. Having subsequently ascertained that defendant Augusta had no title to the mortgaged prop-

erty, complainant instituted this suit, asking to be sub-
rogated to the rights of the mortgagee in the Gary
mortgage. * * *

"Justice MONTGOMERY, speaking for this court (see
*Palmer* v. *Sharp*, 112 Mich., at page 423), said:

"'In numerous cases in this State, parties who have accepted
securities in good faith upon a loan made for the purpose of dis-
charging existing incumbrances upon the same real estate, have,
upon its appearing that the security was ineffectual or invalid,
been allowed to be subrogated to the rights of prior lienors;
there being no person intervening entitled to superior equities.'
(citing cases).

"This principle and these authorities clearly entitle
complainant to relief.

"The fact that the property is a homestead does not,
as contended by defendants, make the doctrine of sub-
rogation inapplicable. That circumstance did not
lessen the rights of the original mortgagee, and there-
fore does not affect complainant, who, by subrogation,
has acquired those rights. * * *

"In the case at bar, complainant's mistake was not
one of law. He did not know the facts."

It is true that in the above case there was no in-
terest of a remainderman involved, but in one of the
numerous situations involved in *Stroh* v. *O'Hearn*,
*supra*, the exact situation here presented was in issue.
Mr. Stroh had loaned money to pay off some mort-
gages on property of the O'Hearn estate, and had
taken as security therefor a mortgage, signed by John
and Martin O'Hearn, covering a portion of the lands
of the estate in which said John and Martin O'Hearn
had but a life estate, instead of the absolute title in
fee which all the parties concerned honestly believed
they owned. In passing on the rights of Mr. Stroh,
Mr. Justice STEERE said:

"The mortgages had been foreclosed and sale de-
creed, and the legacies were past due and payable when
Stroh and Bauman first became connected with the

200—Mich.—32.

estate. They were in no way responsible for the conditions which had arisen. Under the apparent necessity of raising money to avoid a sacrifice of the entire estate and meet these pressing obligations, through innocent misrepresentation and a misunderstanding all around as to the condition of titles, they advanced the money to pay off those liens, under the honest belief that they were paying incumbrances on property bought or security taken, based on perfect titles. We think it is within the power of a court of equity to grant them subrogation, subject to such conditions as are just and equitable. They are not arbitrarily entitled to it as a matter of right, irrespective of equitable considerations arising in favor of other interests which may be affected thereby. Subrogation is an equitable doctrine depending upon no contract or privity, and proper to apply whenever persons other than mere volunteers pay a debt or demand which in equity and good conscience should have been satisfied by another. It is proper in all cases to allow it where injustice would follow its denial, and in allowing it all injustice should be guarded against so far as possible. We need not go afield in other jurisdictions for authority upon this subject; the law is well settled in this State. *Detroit Fire & Marine Ins. Co.* v. *Aspinall,* 48 Mich. 238 (12 N. W. 214) ; *Lockwood* v. *Bassett,* 49 Mich. 546 (14 N. W. 492) ; *Warner* v. *Hall,* 53 Mich. 371 (19 N. W. 40) ; *Kelly* v. *Kelly,* 54 Mich. 30 (19 N. W. 580) ; *White* v. *Newhall,* 68 Mich. 641 (36 N. W. 699) ; *Palmer* v. *Sharp,* 112 Mich. 420 (70 N. W. 903) ; *Dayton* v. *Stahl,* 132 Mich. 360 (93 N. W. 878) ; *Sproal* v. *Larsen,* 138 Mich. 142 (101 N. W. 213) ; *Taylor* v. *Roniger,* 147 Mich. 99 (110 N. W. 593)."

After discussing the peculiar intermingling of equities due to the complicated facts of that case, he says:

"In granting relief from the consequences of these mistakes, the rights and interests of all parties must be considered. We think it proper, and within the power of a court of chancery, to grant subrogation to Bauman and Stroh to the amount of the liens against the estate which they have paid, less the value of any benefits they may have received from the estate; but the subrogation must be in lieu of that out of which

the mistakes, which justify the court in granting sub-rogation asked, arose.    *    *    *    With these convey-ances canceled and subrogation granted, Stroh and Bauman stand in their relation to the estate as secured creditors only to the amount of the money they ad-vanced in payment of liens against it. Their only right is to have their liens enforced with reasonable dili-gence."

In the instant case, there are no such intervening equities. When the remainder interest in the Hough-ton store property vested in the remainderman, it was incumbered by a mortgage of $5,500, the duty of pay-ing which rested on the remainderman. The mort-gage was paid by another and discharged under a mis-take of fact. If we allow the parties who furnished the money for such payment to be subrogated to the rights of the original mortgagee, the remainderman is thereby left in the identical position he originally oc-cupied, bereft of the inequitable advantage he seeks to retain, but burdened with no incumbrance greater than that which in equity and good conscience he should be required to bear as an incident of the estate which passed to him under the will.

Having loaned the sum of $3,000 for the express purpose of paying off a prior incumbrance on the land taken as security for such loan under a mistake of fact whereby the mortgage became defective, and there being no intervening incumbrances or equities, plain-tiff is entitled to be subrogated to the lien of the in-cumbrance so discharged, to the extent of $3,000.

Inasmuch as Mrs. Gitzen was personally liable on the note and mortgage given by her to the plaintiff, and had personally received the benefit of the loan over and above the $3,000, and her executor has intervened in this case, equity will give the plaintiff a lien on a sufficient portion of the amount to which Mrs. Gitzen is entitled to be subrogated, as above provided, to pay the balance due on plaintiff's mortgage over and above

the $3,000 to which it is entitled to be subrogated. The plaintiff and intervener, as the equitable assignees of the Hennes mortgage, should have the right to foreclose the same to enforce payment.

Assuming that the amount found due in the decree of the court was determined in accordance with the rules of law herein set forth, the decree of the court below will be affirmed in all respects, with costs to the plaintiff and to the intervener.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.