NORMAN H. MARMET, SR., ET AL., APPELLEES, V. NORMAN H. MARMET, JR., ET AL., APPELLANTS, IMPLEADED WITH PATTY SUTTER MARMET ET AL., APPELLEES.

70 N. W. 2d 301

Filed May 6, 1955. No. 33712.

*Archibald J. Weaver,* for appellants.

*Wiltse & Wiltse,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is a partition action brought in the district court for Richardson County by Norman H. Marmet, Sr., and Viola E. Marmet. The district court found that plaintiff Norman H. Marmet, Sr., had an undivided seven-ninths

interest in the 152.58 acres being partitioned and that each of the defendants, Norman H. Marmet, Jr., Gene F. Marmet, and Melvin O. Marmet, had an undivided two twenty-sevenths interest therein. The court then decreed partition thereof accordingly but charged each of these defendants' share with $645.52 in favor of the plaintiff Norman H. Marmet, Sr. These defendants filed a motion for new trial and, from the overruling thereof, have filed this appeal.

We shall herein refer to Norman H. Marmet, Sr., as appellee except when necessary to refer to him by his name and to the three appealing defendants as appellants except when it becomes necessary to refer to them by their names.

Two of the appellants, Gene F. Marmet and Melvin O. Marmet, are minors over 14 years of age. They were represented in the district court by a guardian ad litem. The guardian ad litem took this appeal for them and is properly representing them here.

The principal question presented by this appeal is, under the facts disclosed by the record, is appellee entitled to be subrogated to the mortgage lien which was on the lands being partitioned at the time appellants became the owners of an interest therein as heirs of their mother, and if so, the amount?

The record shows, either by admissions in the pleadings or stipulations of the parties, that on October 30, 1946, appellee and his then wife, Amanda E., signed a $9,000 note payable to Henry C. Barton and executed a mortgage on the lands referred to herein to secure it, which lands constituted their homestead; that thereafter, on November 14, 1948, Amanda E. Marmet died intestate leaving as her sole and only heirs at law appellee, her husband, and their four sons, Norman H., Jr., Gene F., Melvin O., and Meryln Leon; that her estate has never been administered; that she died seized of an undivided one-third interest in the 152.58 acres herein being partitioned which were then subject to the

$9,000 mortgage hereinbefore described; that the son Merlyn Leon, born November 13, 1948, died intestate on November 15, 1948; that his estate has never been administered; that on July 14, 1951, appellee and his then wife, Viola E., executed a $15,500 note and mortgage to W. R. Boose, giving as security therefor appellee's interest in the 152.58 acres; that $9,000 of this loan was used to pay the existing mortgage on the farm, the origin of which has already been set forth; and that the mortgage given to secure this loan of $9,000 was cancelled and released of record.

The pleadings of both parties show that on October 30, 1946, when Amanda E. Marmet executed the $9,000 note and mortgage, she was a married woman, the wife of appellee. Appellants pleaded, and here contend, that appellee was primarily liable for the indebtedness which he paid and consequently not entitled to the benefit of the doctrine of subrogation.

Section 62-1,192, R. R. S. 1943, defines a person primarily liable on an instrument as follows: "The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are 'secondarily' liable."

If appellee was the only one primarily liable for the $9,000 indebtedness then he would not be entitled to subrogation for, as we said in Luikart v. Buck, 131 Neb. 866, 270 N. W. 495: "The doctrine of subrogation is not available to one who pays his own primary obligation." In that opinion the court went on to say: "The right of subrogation never follows an actual primary liability, and one who discharges a primary liability has no right of subrogation against another. In such cases payment is an extinguishment of the liability. 60 C. J. 712." See, also, 50 Am. Jur., Subrogation, § 20, p. 695; 83 C. J. S., Subrogation, § 8, p. 600; 9 Thompson on Real Property (Perm. ed.), § 5055, p. 515; 59 C. J. S., Mortgages, § 876, p. 1706.

As stated in 83 C. J. S., Subrogation, § 8, p. 601: "* * * subrogation is not allowed in favor of him who pays a debt in performance of his own obligation, since the right of subrogation never follows an actual primary liability, and there can be no right of subrogation in one whose duty it is to pay, or in one claiming under him against one who is secondarily liable, or not liable at all."

On the other hand appellee contends that the property was subject to a mortgage indebtedness incurred by both Norman H. Marmet, Sr., and Amanda E. Marmet and that, being joint makers, both Amanda E. Marmet and Norman H. Marmet, Sr., were primarily liable to the other for contribution in event one paid the indebtedness.

Amanda E. Marmet could and did give a valid mortgage on her interest in the land. See § 42-202, R. R. S. 1943.

If Amanda E. Marmet, the wife, was primarily liable with appellee, her husband, for the $9,000 debt secured by their mortgage we could agree with appellee that he would then be entitled to contribution from her and, to the extent of the right to contribution, subrogated to all rights under the mortgage which was given to secure it. See Exchange Elevator Co. v. Marshall, 147 Neb. 48, 22 N. W. 2d 403. Therein we said:

"A joint or joint and several debtor who has been compelled to pay more than his share of the common debt has the right of contribution from each of his co-debtors. * * *

"The paying debtor is entitled to recover from the other or others the amount which he has paid in excess of his own proportionate part."

"At common law the husband and wife are treated as one person, that is, the legal existence of the wife is suspended during marriage, and she becomes incapable of making a valid contract to bind either herself or her estate." Webb v. Hoselton, 4 Neb. 308, 19 Am. R. 638.

"The common-law disability of a married woman is

still in force in this state, except as it has been abrogated by statute." Fidelity & Deposit Co. v. Lapidus, 136 Neb. 473, 286 N. W. 386. See, also, Grand Island Banking Co. v. Wright, 53 Neb. 574, 74 N. W. 82.

"Under our statute, a married woman is but partially emancipated from her common-law disability to contract." Farmers' Bank v. Boyd, 67 Neb. 497, 93 N. W. 676.

"The statute has removed the common-law disability of a married woman to bind her separate property, where her contract is made with intent on her part to bind it." John Fletcher College v. Estate of Pailing, 121 Neb. 847, 238 N. W. 750.

"When a married woman signs a note there is no presumption that she intended thereby to fasten a liability upon her separate estate, but in an action on such note, where coverture is pleaded as a defense, and proved, the burden is upon the plaintiff to establish that it was made with reference to, and upon the credit of, her property, and with the intent to bind the same." Grand Island Banking Co. v. Wright, *supra*.

We have also said: "A valid provision in the contract, expressly and unequivocally binding her separate estate, is conclusive proof of such intention, and cannot be contradicted by parol evidence." Fidelity & Deposit Co. v. Lapidus, *supra*.

But, "* * * in cases where the note does not contain a clause to the effect that the wife intends to bind her separate estate, parol evidence is admissible to show the intent of the parties." Sturm v. Lloyd, 130 Neb. 89, 264 N. W. 150.

There is nothing in the pleadings, nor in the stipulation agreed to, to show that Amanda E. Marmet bound, or intended to bind, her separate estate when she signed the note and mortgage. In the absence thereof the trial court was without authority to find that she was personally liable for the $9,000 indebtedness. See, Dodge

v. Healey, 103 Neb. 180, 170 N. W. 828; Filley v. Mancuso, 135 Neb. 403, 281 N. W. 850.

The pleadings set forth the married status of Amanda E. Marmet at the time she signed the note and mortgage but the appellants did not specifically allege in their answers that she did not intend to thereby bind her separate estate. In First Nat. Bank of Chicago v. Stoll, 57 Neb. 758, 78 N. W. 254, we said: "A plea of coverture must negative the conditions under which a married woman is by statute permitted to contract."

The foregoing is based on our holding in Gillespie v. Smith, 20 Neb. 455, 30 N. W. 526, wherein we said: "* * * when a married woman sets up her coverture to avoid liability on her contracts she must in her answer negative all the causes from which otherwise her liability may be inferred, as that 'the contract did not concern her separate property, trade, or business.' "

However, in Grand Island Banking Co. v. Wright, *supra,* we said: "When a married woman signs a note there is no presumption that she intended thereby to fasten a liability upon her separate estate * * *." Consequently it could not be inferred that by merely signing a note Amanda E. Marmet intended to bind her separate estate.

As stated in Farmers' Bank v. Boyd, *supra*: "The signing of a promissory note by a married woman creates no presumption of consideration or of her intention to bind her separate estate."

We think the correct rule is stated in Grand Island Banking Co. v. Wright, *supra.* Therein this court held that when coverture is pleaded and proved or admitted, the burden is upon the plaintiff to establish that the note, upon which the action is based, was made with reference to, and upon the credit of, her property and with the intent to bind the same. Insofar as the rule laid down in First Nat. Bank of Chicago v. Stoll, *supra,* can be said to be in conflict therewith the same is modified. In support of this holding, see First Nat. Bank of Sutton v.

Grosshans, 54 Neb. 773, 75 N. W. 51; State Nat. Bank v. Smith, 55 Neb. 54, 75 N. W. 51; Citizens State Bank v. Smout, 62 Neb. 223, 86 N. W. 1068; Farmers' Bank v. Boyd, *supra;* Northwall Co. v. Osgood, 80 Neb. 764, 115 N. W. 308; Dodge v. Healey, *supra;* Fidelity & Deposit Co. v. Lapidus, *supra.*

As stated in First Nat. Bank v. Ernst, 117 Neb. 34, 219 N. W. 798: "Intent of a married woman to bind her separate estate for the payment of a note executed in Nebraska, as surety for her husband with whom she is living in Nebraska, where such note does not relate to her separate estate, trade, or business, is a condition precedent, in the absence of which she has no capacity to make a binding contract."

And in Farmers' Bank v. Boyd, *supra,* we said: "The burden of proof is upon the holder of a promissory note signed by a married woman to show that she intended to bind her separate estate for the satisfaction of the obligation." See, also, John Fletcher College v. Estate of Pailing, *supra;* Fidelity & Deposit Co. v. Lapidus, *supra;* Dodge v. Healey, *supra;* Filley v. Mancuso, *supra.*

Appellee had a life estate in the property when he paid the $9,000 indebtedness, since it was the homestead of the parties at the time Amanda E. Marmet died. Appellee calls our attention to the principle that when a life tenant is compelled to pay off a mortgage debt in order to protect his life estate that he ordinarily is, as against remaindermen, subrogated to the lien of the mortgage indebtedness.

As stated in Downing v. Hartshorn, 69 Neb. 364, 95 N. W. 801, 111 Am. S. R. 550: "It is undoubtedly a general rule that where a tenant for life pays off a mortgage or other charge upon the entire estate, he is presumed to do so for his own benefit, and may preserve and enforce the lien for reimbursement over and above the proportion of the debt which he is bound to contribute."

And in Tindall v. Peterson, 71 Neb. 160, 98 N. W.

688, we said: "It is a general rule, subject to exceptions not applicable to the case at bar, that a life tenant, who in order to preserve the estate pays off an incumbrance upon the fee, is entitled to reimbursement from the reversioners or remaindermen."

But this principle has no application where the life tenant paid off his own debt for which he alone was primarily liable. That situation results in an exception to the general rule.

Appellee also calls our attention to the principle that a tenant in common who has paid off a lien or an incumbrance on the property is ordinarily entitled, on partition, to a proportionate reimbursement therefor from the other tenants. Likewise this principle has no application where the tenant in common has paid off his own debt for which he alone was primarily liable.

Having come to the conclusion that appellee has failed to show that Amanda E. Marmet intended to obligate herself upon the $9,000 note when she signed it by agreeing to make her separate estate liable therefor, we find she was not personally obligated to pay it. On the other hand we find the indebtedness evidenced by the note was the primary obligation of appellee, that he was personally obligated to pay it, and that when he did so the debt was extinguished. Consequently we think the trial court was in error in subrogating the appellee to the lien of the mortgage given to secure the note, which appellee had paid, and in charging the share of these appellants in the land with any part thereof.

We therefore reverse that part of the trial court's decree charging each of the appellants' interest in the land with $645.52 with direction that the decree be modified in accordance with our opinion herein. The guardian ad litem is allowed a fee of $150 for services in this court, which amount is to be taxed as costs. Costs are taxed to appellee, Norman H. Marmet, Sr.

REVERSED AND REMANDED WITH DIRECTIONS.