JAMES A. LIGON ET AL. v. SAMUEL P. BARTON.

[40 South. Rep., 555.]

1. DEEDS. *Delivery. Deposit. Husband and wife.*

Where a husband wrote out and signed a formal deed purporting to
convey lands to his wife, placed it in a box, serving as a receptacle
for his private papers and kept in a wardrobe used by himself and
his wife, and it remained therein until after his death, the wife
being unadvised of its existence, it was ineffectual to invest her
with title, since it was not delivered.

2. SAME. *Estoppel. Innocent purchaser.*

The children of a decedent are not estopped from claiming their in-
terest in land, because their father, from whom they inherited it,
signed an undelivered writing in his lifetime purporting to convey
the land to their mother, who, after his death, deeded it to a pur-
chaser having no notice of the undelivered instrument.

3. SAME. *Vendor and vendee. Bona fide purchaser. Registry of deeds.*
*Constructive notice. Defective acknowledgement.*

A deed is not recordable if the acknowledgement fail to show its
delivery, and its transcription on the record of deeds will not
impart constructive notice of its existence.

4. SUBROGATION. *Advances to discharge lien. Subsequent mortgagees.*

A second mortgagee will be subrogated to the rights of a first one
where the land descended at the death of the first mortgageor to
his widow and children as tenants in common and the widow, mis-
takenly supposing that she owned the entire estate, executed the
second mortgage to one laboring under the same mistake, thereby
raising money with which she paid off the first mortgage.

FROM the chancery court of, first district, Hinds county.

HON. ROBERT B. MAYES, Chancellor.

Ligon and others, the appellants, were complainants in the
court below; Barton, the appellee, was defendant there.    From
a decree in defendants' favor the complainants appealed to the

supreme court.    The facts are fully stated in the opinion of the court.

*Harper & Potter,* for appellants.

If the deed from Ligon to his wife, granting merely a power to sell the land for a particular purpose, had been properly acknowledged and ready for delivery, keeping it in his own room among his private papers was not of itself such negligence or disregard of the interest of others as to make an estoppel against his heirs, even if the deed had been taken from its place of keeping by his wife during his lifetime and placed on record. He had a right to trust his wife and to rely upon her dealing honestly with him, and it is probable that he regarded the tin box, where the deed was kept, as the safest place for its keeping. Clearly, this would be the view of any man of ordinary prudence in dealing with members of his household.

In a California case where the dealing was with a stranger and at arms' length, a grantor who had a deed ready for delivery and was to deliver it upon the grantee's executing a mortgage to secure the purchase money, allowed the grantee to take it from the room and be absent with it for a half hour, during which time he conveyed to an innocent purchaser for value, it was held: "That the act of the grantor in allowing the deed to be removed from the room, before the execution of the mortgage, even conceding it to be negligence on his part, was not such a degree of negligence as to create an estoppel against him in favor of the purchaser without notice, to prevent a plea of non-delivery of the deed to the grantee."    *Gould* v. *Wise,* 97 Cal., 532.

Where a husband and wife made a deed to the wife's daughter, in order to place the title to land in such a condition that the surviving spouse could hold and transfer the property without reference to the minor children, and the deed was not delivered, but placed by the husband in a drawer of an organ where he kept his private papers.    The grantee was a member of the family,

and took the deed, without permission, had it recorded, and sold the property, it was held: "That the husband was not negligent in keeping the deed as he did, so as to estop him as against his step-daughter and her grantee from suing for its cancellation." *Garner* v. *Risinger*, 81 S. W. Rep., 343.

The deed of Ligon contained a defective acknowledgment and was not subject to recording, and not being fully executed there could be no estoppel in this case.        *Tasher* v. *Beckwith*, 30 Wis., 55.

There is no case in the books where the doctrine of estoppel has been successfully invoked under similar facts to the case at bar, and where more than ordinary care is required in handling an undelivered deed.        The doctrine in this state rather opposes the idea that title can be acquired to land by mere estoppel.

"In the absence of fraud, misrepresentation, culpable silence, or the equivalent, a party cannot by estoppel be divested of title to real estate."        *Thomas* v. *Romana*, 82 Miss., 256 (s.c., 33 South. Rep., 969); *Sulphine* v. *Dunbar*, 55 Miss., 255; *Staton* v. *Bryant*, 55 Miss., 261; *Davis* v. *Bowmar*, 55 Miss., 780; *Murphy* v. *Jackson*, 69 Miss., 403 (s.c., 13 South. Rep., 738); *Hill* v. *Nash*, 73 Miss., 849 (s.c., 19 South. Rep., 707); *Demourelle* v. *Piazza*, 77 Miss., 433 (s.c., 27 South. Rep., 623).

There can be no estoppel in this case, unless it arise from the mere fact that a man died with an undelivered deed in his possession.        Whether he kept it with caution or neglect is immaterial, since the fact remains that while he lived it remained safely in his possession, and if the deed had been kept with the utmost caution, it of necessity went into the hands of his family at his death.        To make an estoppel by conduct: "1. There must have been a representation or concealment of material facts.        2. The representation must have been made with the knowledge of the facts.        3. The party to whom it was made must have been ignorant of the truth of the matter.        4. It must have been made with the intention that the other party should act upon it.        5.

The other party must have been induced to act upon it." Bigelow on Estoppel, p. 544; *Turnipseed* v. *Hudson,* 50 Miss., 436.

"The rule is well settled that unless the representation of the party to be estopped has been really acted upon, the other party acting differently, that is to say, from the way he would otherwise have acted, no estoppel arises." Bigelow on Estoppel, p. 620; *Sulphine* v. *Dunbar,* 55 Miss., 255; *Staten* v. *Bryant,* 55 Miss., 261; *Davis* v. *Bomar,* 55 Miss., 781; *Love* v. *Stone,* 56 Miss., 449.

"An equitable estoppel can be predicated on conduct only where the party sought to be estopped, acts with full knowledge of the facts, unless he asserts to be true that which he does not know to be true, and his adversary relies upon the statement, and thereby suffers injury." *Thomas* v. *Romano,* 82 Miss., 256 (s.c., 33 South. Rep., 969).

In view of the fact that Mr. Barton did not rely upon this deed, and did not know of its existence, and appellants made no representation to him, it is difficult to understand how he can successfully set up the deed as having misled him to his injury, or how appellants are estopped to assert title. The unauthorized act of the clerk in copying Mr. Ligon's deed into the record books was void, and Mrs. Ligon did a vain thing in taking it to him to be recorded, and more particularly so since no one pretends that they were misled by its being on the record books. *Buntyn* v. *Compress Co.,* 63 Miss., 194.

If the deed from Mr. Ligon to his wife had been acknowledged, delivered and placed on record, Mr. Barton would have acquired no title to the undivided interest of appellants in the land, because Mrs. Ligon inherited from her husband, and owned in fee simple an undivided one-ninth interest in the land involved in this suit, and Mr. Ligon's deed only gave a power of sale for a particular purpose, and in her deed to Mr. Barton there is no reference to the power or to the deed from Mr. Ligon to her. *Yates* v. *Clark,* 56 Miss., 216; *Hay* v. *Mayer,* 34 Am.

Dec., 453; *Holder v. Am. Inv. & Loan Co.,* 94 Ga., 640; *New Eng. Mtg. Co.* v. *Buice,* 98 Ga., 795; *Bell* v. *Twilight,* 22 N. H., 500; *Howles* v. *Fisher,* 77 N. C., 437; *Ridgely* v. *Cross,* 83 Md., 161; *Daniel* v. *Spelt,* 100 Fed. Rep., 727; 2 Wash. Real Prop., sec. 1717, p. 628; Sugden on Powers (vol. 1), p. 453; 4 Kent's Com. (13th ed.), p. 335; 2 Perry on Trusts, sec. 511 (c).

The general doctrine is that a purchase by one tenant in common of an outstanding title or incumbrance, inures to the benefit of all, and the universal rule, which has never been departed from as far as our information goes, is that a tenant in common can never so acquire title hostile to his co-tenants, where he, himself, is personally liable and bound to meet a part of the outstanding incumbrance. *Smith* v. *McWhorther,* 74 Miss., 400 (s.c., 20 South. Rep., 870); *Wyatt* v. *Wyatt,* 81 Miss., 219 (s.c., 32 South. Rep., 317); *Turner* v. *Sawyer,* 150 U. S., 578; *Ingles* v. *Webb,* 117 Ala., 387; *Brittain* v. *Hardy,* 20 Ark., 381; *Olney* v. *Sawyer,* 54 Cal., 379; *Montegue* v. *Selb,* 106 Ill., 49; *McPheelers* v. *Wright,* 124 Ind., 560; *Leach* v. *Hall,* 95 Iowa, 611; *Hinters* v. *Hinters,* 114 Mo., 26; *Carson* v. *Broody,* 56 Neb., 648; *Knalls* v. *Barnhart,* 71 N. Y., 474; *Touney* v. *Touney,* 159 Pa., 277; *Farrar* v. *Farrar,* 29 Gratt (Va.), 135; *Gilchrist* v. *Beswick,* 33 W. Va., 168; *Roundtree* v. *Denson,* 59 Wis., 522.

*Alexander & Alexander,* and *George B. Power,* for appellee.

1. The heirs of B. T. Ligon are estopped to deny the delivery of the instrument, or to vacate the conveyance made in execution of the power contained in it.

2. If the heirs of B. T. Ligon are estopped, yet he treated the deed as having been delivered, and it will be so treated in a court of equity.

3. S. P. Barton had the right to buy at the sale under trust

deed to the mortgage company, and as the sale was fair, it will now be confirmed.

4. If the deed from Ligon to his wife was never delivered and the heirs of Ligon are not estopped and the foreclosure sale was void, yet Alexander and the estate of E. M. Parker advanced the money to discharge the mortgage company's debt and took a mortgage from Barton, they are innocent purchasers, and as such are entitled to enforce their mortgage, and also to subrogation to the mortgage of the mortgage company.

5. B. T. Ligon, being the natural head of his family and provider therefor, and the debt of the mortgage company being primarily his debt, his land will be first subjected. 9 Am. & Eng. Ency. Law (2d ed.), 155; *Gage* v. *Gage,* 36 Mich., 233.

In *Burton* v. *Huntington,* 21 Mich., 416, which was the case of delivery of a note, the court draws the distinction very clearly between the theft of a note and negligence or misplaced confidence on the part of the maker by which the payee got possession. The doctrine is clearly recognized that if a third person is injured through the negligence or carelessness of the maker, he will be estopped to deny delivery.

In *Garner* v. *Risinger,* 81 S. W. Rep., 343, the question turned on the intent of the grantor, and he was still living and testified as to his intent. The deed was not placed in any receptacle to which the grantee, the stepdaughter, had access, and the court excludes all idea of negligence by stating that there was nothing in the testimony to indicate that he had any reason to suppose that she would attempt, without permission, to obtain possession of the deed, and, therefore, the court held that the evidence did not show that he was guilty of negligence. The opinion is a clear recognition that the grantor might be estopped. *Tisher* v. *Beckwith,* 30 Wis., 55; *Harkreader* v. *Clayton,* 56 Miss., 383; *Lobdell* v. *Mason,* 71 Miss., 937 (s.c., 15 South. Rep., 44); Code 1892, § 197; *Hughes* v. *Wilkinson,* 37 Miss.,

---

---

482; 9 Am. & Eng. Ency. Law (2d ed.), 154; *Newton* v. *Bealer,* 41 Iowa, 334 (16 Cyc., 774).

Argued orally by *Wiley H. Potter,* for appellants, and by *C. H. Alexander,* and *Frank Johnston,* for appellee.

CALHOON, J., delivered the opinion of the court.

Mrs. Sarah C. Ligon owned 720 acres of land, and her husband, B. T. Ligon, owned 156½ acres adjoining it.   The two made a trust deed, covering both tracts, to secure $3,500, to the Jarvis-Conklin Mortgage Company.    With matters in this shape, B. T. Ligon wrote and signed and attempted to acknowledge the following:

"HINDS COUNTY, MISS., June 5th, 1892.

"For and in consideration of one dollar, I hereby bargain, grant and sell to S. C. Ligon, of. Hinds county, the following lands: E. ½ of S. E. ¼ of section 25, T. 6, R. 1 W., lying north of the Clinton dirt road, containing 76½ acres, more or less; also W. ½ of S. W. ¼ of section 30, T. 6, R. 1 E., north of V. & M. R. R.    This deed is made for the purpose of her making sale or sales to pay off mortgage on this place and on her property.

"B. T. LIGON.

"Personally appeared before me, a J. P. in and for Hinds county, B. T. Ligon, who acknowledged that he signed the above deed for the consideration stated.

"This June 4, 1892.                S. L. DAVIDSON, *J. P.*"

This he put in a tin box among his private papers, which he kept in a wardrobe, used by both himself and his wife, in their bedroom.    It was never delivered, and Mrs. S. C. Ligon had no knowledge of its existence until some months after his death, and nearly three years after he signed it she came upon it, and, thinking it all right, she caused it to be put on the record of deeds.    On the death of B. T. Ligon, his 156½ acres descended

to the eight appellants, his children, and his wife, Sarah C., to each one-ninth, subject, of course, to the Jarvis-Conklin incumbrance on the whole tract. Mrs. Ligon having, as will be seen, subsequently conveyed, this controversy affects only eight-ninths of the 156½-acre tract of B. T. Ligon, deceased. In this condition of things, Mrs. Ligon made a conveyance to appellee, S. P. Barton, of the whole property, including both tracts, as she and he thought she had the right to do. The consideration of this conveyance was $500 in cash paid by Barton and his agreement to pay off and satisfy the Jarvis-Conklin incumbrance. So, by this conveyance, he took title to the 720 acres owned by Mrs. Ligon, and her one-ninth as heir of B. T. Ligon's 156½ acres. Whether he got anything of the eight-ninths interest of the appellants in this 156½ acres is now for determination.

Subsequently to all the foregoing history, S. P. Barton, who had agreed to pay off the Jarvis-Conklin debt, got an extension of the payment of it for three years, to be paid in gold coin. The assignees of this Jarvis-Conkin Company attempted to foreclose their trust deed in chancery. Sale was made under decree and S. P. Barton bought at the sale. He himself caused the foreclosure proceedings, and the sale under them at which he bought, to be had, and for the express reason that he got wind of the claim of the heirs of B. T. Ligon and desired thereby to strengthen his title. But it cannot be successfully controverted that the sale is void, and nothing need be wasted on this. Barton was a tenant in common claiming adversely, and had reason to believe it when he bought.

A deed of trust on the whole of both tracts was given by S. P. Barton to secure $3,000 to Mr. Alexander, agent, a third party, and this money was paid on the Jarvis-Conklin Company debt. The bill in this record is to assert title of the eight children, and for accounts of rents and profits and for partition as between them, and the court below dismissed it, basing the decree solely on the ground that complainants were estopped "on the facts and

circumstances in evidence to assert title against defendant."
We cannot assent to this.    There is no circumstance in the valid
evidence which would have estopped B. T. Ligon from destroy-
ing his signed deed before delivery, and none to show any fraud
or misrepresentation by any of his children, and nothing what-
ever to show appellants to be in any class in the category of
action or nonaction, misleading speech or misleading silence,
etc., laid down in the books, one or more of which must exist in
order to constitute equitable estoppel.    2 Pom. Eq. Jur., sec.
805, and the authorities cited in the brief of counsel for appel-
lants, especially *Turnipseed* v. *Hudson,* 50 Miss., 429 (19 Am.
Rep., 15).

The deed was never delivered.    *Hall* v. *Waddell,* 78 Miss.,
16-26 (27 South. Rep., 936; 28 South. Rep., 831).    Barton
knew nothing of it, and therefore could not have relied on it,
even if such reliance would have availed, if he had known of it
in fact.    The record of it conveyed no constructive notice,
because of the fatal defect in the acknowledgment in omitting
the word "delivered."    Inasmuch as Barton paid the money,
which he borrowed from the beneficiaries in the Alexander trust
deed, on the Jarvis-Conklin incumbrance, which covered both
tracts and which was joined in by Ligon, they, the said benefi-
ciaries, are to that extent subrogated to the rights of the Jarvis-
Conklin Company under its incumbrance.

Since Barton was co-tenant, but holding adversely and to the
exclusion of the appellants, an account should be taken of the
rental value of the 156½-acre tract, and the eight-ninths of it,
of the appellants, credited on the amount of the Jarvis-Conklin
debt, proportioned with the other tract, to the amount so paid
by Barton, and whichever exceeds the proportion shall have
decree over, with lien on the tract of the other.    But the Alex-
ander trust is a first lien on both tracts, and, if decree of sale be
necessary to obtain this money, it shall be rendered so as to pro-

tect the equities on *pro rata* adjustment, and not be realized exclusively from either tract.

Judge WHITFIELD, being disqualified by relationship to one of the parties, took no part in this case.

*Reversed and remanded.*