## SHAW *v.* MEYER-KISER BANK.

[No. 25,428. Filed May 18, 1927. Rehearing denied February 24, 1928.]

1. GUARDIAN AND WARD.—*Statute does not authorize court of another state to order guardian to mortgage ward's real estate in Indiana.*— The statute (§§3431-3435 Burns 1926) authorizing guardians to mortgage real estate of their wards does not empower the court of another state to make a valid order affecting the ward's realty in this state, and a mortgage of Indiana real estate executed by a foreign guardian pursuant to such order is invalid though the procedure prescribed by our statute was followed. p. 692.

2. GUARDIAN AND WARD.—*One loaning money to foreign guardian is charged with knowledge of guardian's want of authority to execute mortgage on ward's realty in Indiana.*—One loaning money to a foreign guardian to pay existing mortgages on insane ward's realty in this state was charged with knowledge of such guardian's circumscribed jurisdiction and his want of authority to execute a mortgage securing such loan, and, in the absence of ratification by the ward after being judicially declared of sound mind, such mortgage could not be enforced. p. 693.

3. QUIETING TITLE.—*Suit to quiet title governed by equitable principles.*— A suit to quiet title against mortgages executed by a guardian of an insane ward, in which the defendant filed a cross-complaint to foreclose such mortgages, is governed by equitable principles. p. 694.

4. EQUITY.—One of the principles of equity is that he who invokes the aid of a court of equity must show that he has done equity to him of whom he complains. p. 694.

5. SUBROGATION.—*One loaning money to foreign guardian to pay matured mortgages on ward's land held entitled to be subrogated to rights of mortgages.*—One who loaned money to a foreign guardian to pay matured mortgages on his insane ward's land that were about to be foreclosed, attempting to secure the repayment thereof by mortgages executed by such guardian without complying with the statute authorizing guardians of the insane to execute mortgages on their wards' lands (§§3431-3435 Burns 1926), was entitled to be subrogated to the rights of the mortgagees whose claims were paid, since

one may not profit at the expense of another who acted in good faith. p. 694.

6. EQUITY.—*One for whose benefit money was loaned to a foreign guardian to pay matured mortgages on his land cannot quiet his title as against mortgages given to secure such loan until debts due lender are paid.*—Where a bank loaned money to a foreign guardian of an insane ward to pay matured mortgages on the latter's land that were about to be foreclosed and took as security therefor mortgages executed by such guardian without complying with the statute authorizing guardians of the insane to mortgage their wards' lands (§§3431-3435 Burns 1926), although the mortgages were invalid, the ward was not entitled to quiet his title against them until he discharged the debts due the bank for amounts paid for his benefit.    p. 694.

7. SUBROGATION.—*Bank loaning money on mortgages executed by foreign guardian without complying with our statute held entitled to equitable lien for amount paid for ward's benefit.*—A bank which loaned money to a foreign guardian to pay existing mortgages on his ward's real estate, which mortgages were about to be foreclosed, and took as security therefor mortgages executed by such guardian without complying with the statute authorizing guardians of insane persons to mortgage their wards' lands (§§3431-3435 Burns 1926), was entitled to an equitable lien for the amount paid to the mortgagees and also for the amount paid for repairs on said mortgaged property, with interest on both amounts.    p. 696.  .

From Marion Circuit Court (33,183); *Harry O. Chamberlin,* Judge.

Action by Guy G. Shaw against the Meyer-Kiser Bank, in which the defendant filed a cross-complaint. From a judgment for the defendant on the complaint and on the cross-complaint, the plaintiff appealed to the Appellate Court. (Transferred to the Supreme Court under cl. 2, §1357 Burns 1926). *Reversed.*

*Young & Linder* and *Richard L. Ewbank,* for appellant. *T. W. Annabel,* for appellee.

MYERS, J.—Appellant brought this action against appellee to quiet his title to certain real estate in Marion county, Indiana, against two mortgages held by the latter and executed by Harold L. Reeves as conservator for appellant, an insane person. Answer, general de-

nial.  Three paragraphs of cross-complaint, to each of which a demurrer for want of facts was overruled, followed by an answer of general denial.  The court found the facts specially and stated conclusions of law thereon against appellant.

The errors assigned question the ruling of the court on the demurrer to each paragraph of the cross-complaint; the conclusions of law, and the ruling on the motion for a new trial.

Appellee, by its first and second paragraphs of cross-complaint, sought to have its mortgages declared equitable mortgage liens on the real estate in question and to have the same foreclosed.  The third paragraph proceeded upon the theory of having paid certain existing valid mortgage liens on the real estate in question, thus entitling it to be subrogated to the lien of such mortgages.  The demurrers to the cross-complaint and the exceptions to the conclusions of law present practically the same questions.  Hence, we will give attention to the conclusions only.  *Campbell* v. *Smith* (1913), 180 Ind. 159, 101 N. E. 89; *Marion State Bank* v. *Gossett* (1911), 175 Ind. 211, 93 N. E. 996; *Fry* v. *Hare* (1906), 166 Ind. 415, 77 N. E. 803.

The material facts found by the court January 20, 1922, were, in substance, that on June 17, 1914, appellant was and now is the owner in fee simple of two certain tracts of real estate in Marion county, Indiana, which real estate was purchased by appellant subject to a mortgage on each tract treated as part purchase price therefor.  These mortgages were given by appellant's grantor to the Columbian Insurance Company of Indiana to secure the payment of two notes for $1,700 and $1,600 respectively, with coupon notes attached, executed February 19, 1914, which principal notes were payable five years after date; that on July 12, 1917, ap-

pellant, then and continuously since that time a resident of Cook county, Illinois, was, by an Illinois court, judicially declared to be an insane person, and on August 28, 1917, that court appointed Harold L. Reeve, then and ever since a resident of Chicago, Illinois, conservator of appellant's person and estate. Reeve continued so to act until June 20, 1920, when appellant was judicially declared sane; that while such conservator was so acting, the mortgages on the real estate in question in favor of the Columbian Insurance Company matured. The insurance company demanded payment and refused to renew. In order to avoid the foreclosure of these mortgages, it was necessary for appellant's conservator to negotiate new mortgage loans for the purpose of paying the matured mortgages. Thereupon, the conservator, for and on behalf of appellant and his estate, applied to the probate court of Cook county, Illinois, for, and, on July 10, 1919, he obtained permission and authority to mortgage the above real estate in the sum of $3,600. Pursuant to such authorization and for and on behalf of appellant and his estate, and without any other authority or request, appellant's conservator, in writing, applied to appellee for a loan on each of the two tracts of real estate. Appellee, relying upon the authority given appellant's conservator by the Illinois Probate Court, and for the purpose of benefiting appellant and his estate, as set forth in the application, did agree to furnish appellant's conservator $3,600, and on July 28, 1919, agreeable to the order and authority of the Illinois Probate Court, Harold L. Reeve, as such conservator, before a notary public at Chicago, Illinois, and with the intent and purpose of creating a first mortgage lien upon his ward's real estate, did execute two principal bonds for $1,600 and $2,000 respectively and coupon interest notes thereto attached, and the mortgages on the real estate, to secure the payment of the bonds and interest; that

both appellee and Reeve, as conservator, in the execution and acceptance of the bonds and mortgages, acted in good faith in the entire transaction, but none of these acts were ever ratified or confirmed by appellant. Facts also found show no attempt whatever on the part of the conservator to comply with the statutes of this state authorizing him to negotiate a loan or execute the mortgages in question. This neglect, it appears, was the result of misapprehension common and mutual to both parties. Appellee, in compliance with the orders of the Illinois Court, and its contract with the conservator, personally expended and applied the proceeds of these mortage loans as follows:

| | |
|---|---|
| To the satisfaction and release of record of the mortgage liens of the Columbian Insurance Co. | $3,454.00 |
| Commissions to appellee | 108.00 |
| Preparation of abstracts | 12.25 |
| Examination of abstracts | 10.00 |
| Recording mortgages to appellee | 2.20 |
| Internal revenue stamps | .72 |
| Repairs on mortgaged property | 12.83 |
| | $3,600.00 |

These expenditures benefited appellant and his estate, which benefits he still retains. The findings show default in the payment of interest notes, the election by appellee declaring the principal bonds due and payable with five per cent. attorneys' fees, which bonds in the sum of $3,600, interest notes $108, interest on the aggregate from July 28, 1921, to date of judgment, $149.98, and $180 attorneys' fees, in all aggregating $4,037.98. The conclusions of law were in favor of appellee on the complaint and on each paragraph of the cross-complaint, and judgment in its favor for the aggregate amount of principal, interest and attorneys' fees found due, and a

decree foreclosing the mortgages as an equitable lien against each tract of real estate.

The notes, bonds and mortgages here in question contain no reference to any order of court authorizing their execution, nor do they bear any evidence of having been reported to or approved by any court in this or any other jurisdiction. This is not a case involving irregularities in the proceedings, and therefore precedents applicable to that class of cases do not apply. It affirmatively appears from the conclusions of law and the final decree entered by the trial court in this case that the bonds and coupon notes thereto attached, and the mortgages securing the payment thereof, were treated and enforced as written, and to the same extent as if all formalities and statutory requirements (§§3431-3435 Burns 1926, §§3107a-3107e Burns' Supp. 1921, Acts 1917 p. 297) of this state had been followed literally.

The most that can be said of the facts in support of an equitable mortgage lien is, that Reeve, as conservator, and appellee, in the execution and acceptance of the mortgages in question, acted in good faith, relying entirely upon the order made by the Illinois court.

It will not do to say that the words "any court," and the words "wherever situated," as used in §3431, *supra,* may be construed as empowering a court
1. of a sister state to take jurisdiction over real estate titles in this state, nor can such court make a valid order in cases like the present affecting property in this state, even though it follow the procedure in such cases fixed by our statute. For aught appearing in the pleadings or in the special findings before us, guardians of insane persons in the State of Illinois are governed by the common law. Hence, the letters of conservatorship issued to Reeve must be deemed as local, and his authority confined to transactions within the jurisdictions of the court making the appointment.

We cannot brush aside the principle of law announced in *Earl, Gdn.,* v. *Dresser, Gdn.* (1868), 30 Ind. 11, 15, wherein it is said: "It follows that Dresser cannot, by virtue of his letters of guardianship, granted by the proper court in the State of Michigan, where both he and the ward are domiciled, claim to recover the money in the hands of the resident guardian here, as a legal right, because the letters granted in Michigan confer no such extra-territorial power." Furthermore, in *Funk, Gdn.,* v. *Rentchler* (1893), 134 Ind. 68, 74, 33 N. E. 364, 898, it is held: "In this state, it is doubtful if we have any guardians except such as are authorized by statute, and it is quite certain that a statutory guardian has no power to dispose of the lands of his ward except by a substantial compliance with the statutory requirements."

Appellee is not claiming, nor as presently advised do we know of any authority in this jurisdiction for a guardian to encumber or convey his ward's real estate, except that given to him by statute. The conservator in this case was a foreign guardian who made no pretense of compliance with our law, but, in the face of which, he assumed to "mortgage and warrant" to appellee the real estate in question. Appellee, as a proposition of law, must be charged with knowledge of our statute pertaining to the authority of such guardians to act in matters affecting the title to their ward's land; of the conservator's circumscribed jurisdiction, and his want of authority to execute the mortgages in question. If substantial compliance with our statute is essential to give a guardian, either local or foreign, in this state, authority by contract to legally encumber or convey his ward's real estate, then it follows that the act of Reeve as conservator in executing the mortgages to appellee was unauthorized. However, we do not hold that such action by the conservator might not be ratified by his ward on being judicially declared a person

of sound mind, but, in the absence of such ratification, as here, the lien thus sought to be created is unenforceable as a matter of law. *Crippen* v. *Chappel* (1886), 35 Kans. 495, 11 Pac. 453, 57 Am. Rep. 187.

Appellant sought to quiet his title against these mortgages and appellee to foreclose them. The pleadings make a case governed by equitable principles, one 3, 4. of which is that he who would invoke the aid of a court of equity "must show that he has done equity to him of whom he complains." *Cassell* v. *Lowry* (1904), 164 Ind. 1, 6, 72 N. E. 640; *Russell* v. *Drake* (1916), 184 Ind. 623, 111 N. E. 186; *Otis* v. *Gregory* (1887), 111 Ind. 504, 13 N. E. 39; 21 C. J. pp. 172, 174, §§151, 152.

At the time the mortgages in suit were executed, appellant was admittedly indebted to the Columbian Insurnace Company in the sum of $3,454, secured by valid mortgages on the real estate in question. This debt of appellant was due, renewal thereof refused, and foreclosure of these mortgages seemed unavoidable. With this situation before appellant's conservator, he applied to appellee and secured from it the money with which to pay this debt upon his promise of repayment with semi-annual interest in five years, a promise he had a right to make and which was duly authorized by a court of a sister state wherein he was appointed and qualified. Pursuant to this promise, to which there seems to be no inhibition, appellee, on July 28, 1919, paid and discharged the Columbian debt, and also $12.83 for repairs on this same real estate.

The doctrine of subrogation, an equitable remedy, seems especially applicable to the foregoing circumstances. Appellant suggests that this doctrine 5, 6. cannot apply for the reason that appellee is shown to be a mere volunteer. The facts found by the trial court, fully justified by the evidence, repel the

claim of a volunteer payment.   In addition to the showing to which we have referred, the payment so made by appellee was undoubtedly induced by the conservator's promise first obtained by the court appointing him, and his authorization by such court to borrow money with which to pay the debts of his ward.   It is not claimed, nor does it appear that the conservator, or appellant, or any one on his behalf has ever paid or offered to pay the admitted debts or obligations of appellant that were paid by appellee at the request of appellant's conservator, nor that the money thus obtained from appellee did not inure to the use and benefit of appellant, or to the benefit of his estate.   Under such circumstances, equity will furnish a remedy, not by enforcing the mortgage contract or agreement, as here asserted, but upon the theory of justice and that one may not profit at the expense of another made in good faith.  *Fisher* v. *Bush* (1892), 133 Ind. 315, 32 N. E. 924; *McCoy* v. *Barns* (1894), 136 Ind. 378, 381, 36 N. E. 134; *Jolliffe* v. *Crawford* (1921), 76 Ind. App. 282, 132 N. E. 300. Hence, to state our conclusion, we borrow language from Pomeroy, Treatise on Equitable Remedies §920, "When an obligation is discharged by one not primarily liable for it, but who believes himself to be acting either in the performance of a legal duty, or for the protection of a legal right, *or at the request of the party ultimately bound* (our italics), and even in certain other cases, favored by public policy," equity will protect the party making payments under any one of the above conditions, but he is only entitled, speaking of the instant case, to the rights of creditors whose claims he has paid.   Therefore, until appellant discharges the debts for which his lands were liable, equity and good conscience forbids him from quieting his title.

The evidence in this case, the insufficiency of which is made a cause for a new trial, sustains the findings of

7. the court upon which conclusions of law must rest. Looking to these findings, decisive of the rights of the parties here in interest, and eliminating those relative to the mortgages sought to be foreclosed and exhibited in the first and second paragraphs of the cross-complaint as ineffectual, other than as a part of the transaction pertinent to the general allegations of the third paragraph of the cross-complaint, it follows that appellee is entitled to an equitable lien on the real estate described in appellant's complaint for $3,454 paid by appellee to the Columbian Insurance Company, and $12.83 paid for repairs, with unpaid interest on both amounts since July 28, 1921, and to have its lien foreclosed and the real estate subjected to the payment of these two items with interest.

The trial court, upon the facts found by it, announced five conclusions of law. The first and third, to the effect that the law is with appellee and against appellant upon his first and second paragraphs of complaint, and that he is not entitled to have his title to the real estate described in these paragraphs quieted as against appellee, are sustained. Conclusions 2, 4 and 5, which declared the law to be with appellee upon its first and second paragraphs of cross-complaint entitling it to judgment and a decree foreclosing these mortgages, and recognizing them as creating valid liens, constitute error for which the judgment must be reversed.

Judgment reversed, and the trial court is directed to restate its conclusions of law as indicated by this opinion, render judgment for $3,466.83 with six per cent. simple interest thereon unpaid since July 28, 1921, and enter a decree foreclosing appellee's equitable lien on the real estate described in appellant's complaint.