### INGRAM v. JONES et al.
#### No. 300.

Circuit Court of Appeals, Tenth Circuit.
Jan. 23, 1931.

Charles A. Chandler, of Muskogee, Okl. (Eliot D. Turnage, of Muskogee, Okl., on the brief), for appellant.

E. J. Broaddus, of Wagoner, Okl. (Charles G. Watts, of Wagoner, Okl., on the brief), for appellees Richard Love and Chas. G. Watts.

Before PHILLIPS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

PHILLIPS, Circuit Judge.

Leonard Daniel Ingram brought this action against Minerva Jones, Robert Johnson as administrator of the estate of C. Jones, Polly Barnett, James Barnett, Richard Love and Charles G. Watts to recover judgment upon a certain promissory note dated December 30, 1920, due three years after date, made by Minerva Jones, C. Jones, Polly Barnett and James Barnett and payable to C. Jones and W. T. Wisdom as guardians of Ingram a minor, for the foreclosure of a mortgage securing such note upon 160 acres of land in Wagoner county, Oklahoma, formerly the homestead and surplus allotments of Grace Marshall, a Creek freedman, hereinafter also referred to as Grace Aytch and Grace Love, for subrogation to the rights of J. B. Campbell as mortgagee under a prior mortgage upon such allotments, and for the foreclosure of the Campbell mortgage. This action was commenced on December 15, 1926.

On May 9, 1919, Grace Aytch executed and delivered to Watts a warranty deed for such allotments. It recited a consideration of $1,000. Such allotments were then of the value of about $16,000. On or about January 1, 1920, Grace Aytch married Richard Love. About July 20, 1920, Grace Love employed J. B. Campbell, an attorney-at-law, to set aside the instrument which she had executed in favor of Watts. This instrument she then believed to be a will. Campbell discovered, upon investigation, that it was a deed instead of a will. He took the matter up with Watts and the latter offered to reconvey the land by a quit-claim deed, for $5,000. Watts claimed that he had advanced Grace Love $1,960.40 in cash and rendered her personal services to the value of $3,039.60. Later Watts reduced his claim to $4,500. In order to pay the Watts claim and certain other indebtedness, Grace Love arranged for

a temporary loan of $8,500 from Campbell on July 26, 1920. On that date, she and Richard Love executed and delivered to Campbell a mortgage deed upon such allotments. Campbell assigned this mortgage to the First National Bank of Muskogee and gave the bank his note for $8,500. He disbursed the proceeds of such loan in the following manner: $4,500 to Watts; $500 to Richard Love; $2,500 to Campbell, Leahy & Brewster for attorney's fees; $833.33 in satisfaction of the principal and interest of a note secured by a prior mortgage on the allotments; $122.44 for taxes against the allotments, and the balance for an abstract on the allotments, for revenue stamps, for recording fees, and for other expenses incident to the matter. Before making such temporary loan, Campbell took up the matter of a permanent loan with the guardians of Ingram and they agreed to take over the loan at the maturity of the note to the bank. But for this arrangement, Campbell would not have made the temporary loan.

Watts executed and delivered to Grace Love a quit-claim deed to the allotments on July 26, 1920. On the same date, Grace and Richard Love executed and delivered to Polly Barnett and Minerva Jones a warranty deed therefor, subject to the Campbell mortgage.

On July 22, 1920, Grace Love made a will by which she devised her property in equal shares to Richard Love, her husband, Polly Barnett, her sister, and Minerva Jones, her cousin. The $500 was paid to Richard Love in lieu of his interest in the allotments and the deed to Barnett and Jones was made in aid of the will. Grace Love died about August 28, 1920, and on September 22, 1920, such will was duly admitted to probate by the county court of Wagoner county, Oklahoma.

On October 8, 1920, Richard Love commenced cause No. 4302 in the district court of Wagoner county, Oklahoma, seeking cancellation of such deed to Barnett and Jones. In his petition Love alleged that Polly Barnett and Minerva Jones falsely and fraudulently represented to him that it would be for the best interests of the beneficiaries under such will to divide the cash and other personal property of Grace Love before her death; that he was unable to read or write; that he believed and relied upon such representations and was induced thereby to execute and acknowledge such deed under the belief that it was an acknowledgment of and a receipt for his one-third share in such cash and personal property.

On December 30, 1920, C. Jones and Wisdom as guardians of Ingram, in pursuance of their prior agreement with Campbell as the agent of Grace Love, loaned $8,600 to Polly Barnett and Minerva Jones, took from them the note and mortgage first above referred to, and with the proceeds thereof paid and discharged the Campbell note to the First National Bank of Muskogee. A release of the Campbell mortgage was filed for record January 8, 1921, at 9:55 a. m., and the Ingram mortgage was filed for record on the same day at 10:00 a. m.

On May 26, 1921, Richard Love filed an amended petition in No. 4302 in which he joined Campbell as a party defendant and alleged that the defendants in No. 4302 and C. Jones had represented to him that it was necessary to borrow $5,000 to pay off certain claims against such allotments in order to prevent them from being taken from him and Grace Love; that in the event of the death of Grace Love he would receive no interest in such allotments, and that they would pay him $500 in cash out of the proceeds of such $5,000 loan if he would join in such deed to Barnett and Jones and such mortgage to Campbell, and that by reason thereof he was deceived into executing such deed and mortgage.

On May 25, 1923, Raymond Nelson and Margaret C. Russell, as the alleged guardians of Ingram, commenced cause No. 5259 in the district court of Wagoner county against Polly and James Barnett, Minerva Jones, P. A. Lewis as the administrator of the estate of C. Jones, Richard Love and other persons to recover judgment upon the Ingram note, and for the foreclosure of the Ingram mortgage.

On June 13, 1923, Richard Love filed his answer in No. 5259 in which he alleged that when he executed such deed to Barnett and Jones he had no knowledge of the will of Grace Love, and that Polly Barnett, Minerva Jones, Wisdom and C. Jones concealed from him the fact that Grace Love had made such a will. He also set up the same averments of fraud as were alleged in his amended petition in No. 4302, offered to return the $500 paid him from the proceeds of the Campbell loan, and prayed for cancellation of the Ingram mortgage.

On October 16, 1923, the following stipulation was filed in No. 4302:

### "Stipulation and Dismissal

"It is hereby stipulated and agreed by and between the attorneys for the plaintiff, Messrs. Watts & Watts, and John C. Graves, attorney for Mary Dan, intervenor, and J. B. Campbell and Leahy & Brewster, that J. B. Campbell be dismissed as a party to this cause, without prejudice to any parties herein.

"It is further agreed that the judgment rendered in this action shall not in any way affect the certain cause now pending on this docket, entitled Leonard Ingram, a minor, by his guardians, vs. Minerva Jones, et al., being cause No. (5259), or the rights therein litigated.

"Dated and signed this 13th day of October, 1923.

"[Signed]
    "Watts & Watts,
        Attorneys for Plaintiff.
"John C. Graves,
        Attorney for Intervenor,
                Mary Dan.
"Leahy & Brewster,
        Attorneys for J. B. Campbell."

Thereafter and on the same day, cause No. 4302 came on for trial and resulted in a decree cancelling the deed from Grace and Richard Love to Barnett and Jones. The validity of the Campbell and Ingram mortgages was not determined. Upon appeal, the Supreme Court directed the entry of a decree in No. 4302, decreeing to Richard Love a life estate and one-third of the estate in remainder in such allotments, and to Polly Barnett and Minerva Jones each one-third of the remainder, and awarding Richard Love judgment against Polly Barnett and Minerva Jones for $5,285.00 on account of rents and profits received by them and accrued interests and costs.

Richard Love and Watts assigned their interest in the decree in No. 4302 to Ingram on October 16, 1926.

On October 25, 1926, Ingram filed a so-called "repudiation" in No. 5259, in which he undertook to repudiate the acts of his alleged guardians in commencing that suit. On the same day, Ingram filed a dismissal without prejudice in No. 5259. On August 2, 1927, Ingram filed a motion to dismiss No. 5259 without prejudice. On September 15, 1927, the court denied such motion. On October 14, 1927, Ingram filed his answer to the answer and cross-petition of Richard Love in No. 5259.

In their separate answer and counterclaim in the instant case, Watts and Richard Love in part alleged the concealment and fraud as set up in the answer and cross-petition of Richard Love in No. 5259; the decree in No. 4302; the pendency of No. 5259

on the answer and cross-petition of Richard Love; that on September 11, 1926, Richard Love executed and delivered to Watts a quit-claim deed for an undivided one-half interest in Richard Love's estate in such allotments, and admitted that the deed from Grace Love to Watts was a mortgage to secure an indebtedness of $4,500.

Richard Love testified that, before he signed the deed to Barnett and Jones and the mortgage to Campbell, Campbell told him if Grace Love died Watts "would get everything"; that C. Jones told him he would not get anything if he did not take the $500; and that he did not then know Grace Love had made a will.

The defendants, Minerva Jones, Robert Johnson as administrator, Polly Barnett and James Barnett offered no evidence.

The trial court entered a decree dismissing Ingram's bill without prejudice. Ingram has appealed.

■ Richard Love and Watts wholly failed to establish that the execution of the Campbell mortgage by Richard Love was induced through fraud. The representation that it was necessary to raise funds with which to pay the Watts claim was true. The representation as to what interest Richard Love would take as the surviving spouse upon the death of Grace Love was a mistake of law. It was not shown to be willfully untrue. Indeed, it was in accordance with the existing decisions of the Supreme Court of Oklahoma on the subject (see Thompson v. Cornelius, 53 Okl. 85, 155 P. 602 and Privett v. Rentie, 75 Okl. 191, 182 P. 898) which thereafter, on May 17, 1921, were overruled by In re Pigeon's Estate, 81 Okl. 180, 198 P. 309.

It was stipulated that the validity of the Ingram mortgage should not be determined in No. 4302. Such cause was dismissed as to Campbell. Ingram was not a party thereto. The validity of the Campbell mortgage was not adjudicated therein. The decree in No. 4302, except in so far as it canceled the deed from Grace and Richard Love to Polly Barnett and Minerva Jones, is not binding upon Ingram.

■ The judgment in No. 4302 determined the interests of Richard Love, Polly Barnett and Minerva Jones in the allotments which had theretofore passed to them by inheritance and under the will of Grace Love. It did not convey such interests to them but merely declared the status of the title to the allotments. Therefore, the assignment of such judgment from Love and Watts to In-

gram in no wise affected the title of Richard Love to his interest in the allotments. It transferred only the money judgment for rents, interest and costs. Cucullu v. Bilgery, 48 La. Ann. 1245, 20 So. 662.

Is Ingram entitled to be subrogated to the rights of the mortgage under the Campbell mortgage and to the foreclosure of such mortgage?

■ Richard Love was not an innocent purchaser for value, but took as the heir and devisee of Grace Love. Therefore, he stands in the same position as Grace Love would if she were now living. Burns v. Berry, 42 Mich. 176, 3 N. W. 924, 925; Ripley v. Seligman, 88 Mich. 177, 50 N. W. 143, 147. The Campbell loan was necessary in order to discharge the Watts deed (which Watts claimed was in fact a mortgage), another mortgage, accrued taxes and to pay the expenses incident to the transaction. The Campbell mortgage was a valid lien, prior and superior to the interests of Richard Love.

■ While the deed from Grace and Richard Love to Polly Barnett and Minerva Jones was voidable on account of fraud, nevertheless, at the time of the making of the Ingram mortgage, Richard Love owned a life estate in such allotments and he, Polly Barnett and Minerva Jones each owned an undivided one-third interest in the remainder. Therefore, Ingram's mortgage was valid as to the interests of Polly Barnett and Minerva Jones but voidable as to the interests of Richard Love.

Pursuant to a prior agreement with Campbell as the agent of Grace Love, Ingram, through his guardians, advanced the funds with which to discharge the Campbell mortgage and was to receive a first mortgage on the allotments. The Ingram loan was made for the express purpose of discharging the Campbell mortgage.

■ Where money is loaned to a person in pursuance of an express agreement that it shall be used to discharge an existing incumbrance on his property, and that the lender shall have a first mortgage upon such property to secure its repayment, the lender, if he fails to receive a first mortgage, may be subrogated to the rights of the incumbrancer or lienor whose debt has been thus paid, not only as against the owner of the property but as against any other person who subsequently acquires an interest in the property with knowledge of the circumstances under which the money to discharge the incumbrance or lien was advanced. Cumberland B. & L.

Ass'n v. Sparks (C. C. A. 8) 111 F. 647; In re Lee (C. C. A. 8) 182 F. 579, 583.

█ Where an invalid or defective mortgage is given to secure an advancement of money made for the express purpose of discharging a prior incumbrance and is so used, the mortgagee in the defective mortgage, who took it in the belief that it was valid, is not regarded as a volunteer and is entitled to be subrogated to the lien of the incumbrance so discharged. MacGreal v. Taylor, 167 U. S. 688, 706, 17 S. Ct. 961, 42 L. Ed. 326; Wilkins v. Gibson, 113 Ga. 31, 38 S. E. 374, 84 Am. St. Rep. 204; Emmert v. Thompson, 49 Minn. 386, 52 N. W. 31, 32 Am. St. Rep. 566; Crippen v. Chappel, 35 Kan. 495, 11 P. 453, 57 Am. Rep. 187; Home Sav. Bank of Chicago v. Bierstadt, 168 Ill. 618, 48 N. E. 161, 61 Am. St. Rep. 146; Heuser v. Sharman, 89 Iowa, 355, 56 N. W. 525, 48 Am. St. Rep. 390; Bell v. Bell, 174 Ala. 446, 56 So. 926, 37 L. R. A. (N. S.) 1203; Hall v. Marshall, 139 Mich. 123, 102 N. W. 658, 111 Am. St. Rep. 404; Sou. Cotton Oil Co. v. Napolean Hill Cotton Co., 108 Ark. 555, 158 S. W. 1082, 46 L. R. A. (N. S.) 1049; Levy v. Martin, 48 Wis. 198, 4 N. W. 35; Wilson v. Hubbard, 39 Wash. 671, 82 P. 154; Shaw v. Meyer-Kiser Bank, 199 Ind. 687, 156 N. E. 552. The rule applies where the security fails because of partial or total want of title in the person giving it. Hall v. Marshall, 139 Mich. 123, 102 N. W. 658, 111 Am. St. Rep. 404; Haverford Loan & Bldg. Ass'n v. Fire Ass'n of Phila., 180 Pa. 522, 37 A. 179, 57 Am. St. Rep. 657; Hughes v. Thomas, 131 Wis. 315, 111 N. W. 474, 11 L. R. A. (N. S.) 744, 11 Ann. Cas. 673; Laffranchini v. Clark, 39 Nev. 48, 153 P. 250; Ligon v. Barton, 88 Miss. 135, 40 So. 555; Newcomer v. Sibon, 119 Kan. 358, 239 P 1110, 43 A. L. R. 1387; Northwestern Mut. Savings & Loan Ass'n v. White, 31 N. D 348, 153 N. W. 972; Detroit & N. M. B. & L. Ass'n v. Oram, 200 Mich. 485, 167 N. W. 50, 53, 54; Roark v. Matthews, 125 Ark. 378, 188 S. W. 841.

Watts did not acquire his present claim until September 11, 1926, and he then knew that Ingram, upon the faith of the defective mortgage from Polly Barnett and Minerva Jones, had advanced $8,600 for the express purpose of discharging the Campbell mortgage. He therefore took with full notice of the equitable right of Ingram to be subrogated to the lien of the Campbell mortgage.

We conclude that Ingram is entitled to be subrogated to the lien of the Campbell mortgage.

█ At the time of the commencement of the instant suit, No. 5259 was pending on the answer and cross-petition of Richard Love seeking cancellation of the Ingram mortgage on the ground of fraud. In Oklahoma, a suit to cancel a mortgage is a proceeding in rem. Continental Gin Co. v. Arnold, 66 Okl. 132, 167 P. 613, 617, L. R. A. 1918B, 511; Cushing v. Cummings, 72 Okl. 176, 179 P. 762, 765. This is true because the statutes of Oklahoma provide for constructive service in such actions; and further provide that if the decree of the court is not complied with it shall operate as a release. Section 671, C. O. S. 1921. See, also, Arndt v. Griggs, 134 U. S. 316, 10 S. Ct. 557, 33 L. Ed. 918; Dennison Brick & T. Co. v. Chicago Trust Co. (C. C. A. 6) 286 F. 818. A suit to foreclose the Ingram mortgage is likewise a proceeding quasi in rem. 42 C. J. pp. 17, 18, § 1504. Since the state court acquired jurisdiction in No. 5259 before the commencement of the instant case, it is a debatable question whether the court should have proceeded with the instant case, in so far as it sought a foreclosure of the Ingram mortgage, until the determination of No. 5259. Dennison Brick & T. Co. v. Chicago Trust Co., supra; Zimmerman v. So Relle (C. C. A. 8) 80 F. 417; Boston Acme Mines Corp. v. Salina Canyon Coal Co. (C. C. A. 8) 3 F.(2d) 729. We are of the opinion, however, that the error, if any, was harmless. The state court, in No. 4302, held that the deed from Grace and Richard Love to Polly Barnett and Minerva Jones was void. While the amended complaint in No. 4302, filed after the making of the Ingram mortgage, set up new fraudulent representations as grounds for relief, it did not set up a new cause of action. Vinson v. Graham et al. (C. C. A. 10) 44 F.(2d) 772. Therefore, it related back to the original petition and there was a continuance of the original lis pendens, and Ingram, while not a party to No. 4302, is bound by the judgment therein against his mortgagors, Polly Barnett and Minerva Jones. Mound City Co. v. Castleman (C. C. Mo.) 177 F. 510, 515; Turner v. Houpt, 53 N. J. Eq. 526, 33 A. 28; 38 C. J. p. 41, § 70. It follows that, in so far as the interests of Love in the allotments are concerned, the Ingram mortgage was ineffectual. Section 260, C. O. S. 1921; Baker v. Leavitt, 54 Okl. 70, 153 P. 1099. Since Ingram has already acquired the interests of Polly Barnett and Minerva Jones through sale under execution, a foreclosure of the Ingram mortgage against them would be useless.

The rule between state and national courts that the jurisdiction of the court first acquiring jurisdiction over specific property will be respected by the courts of the other sovereignty may be divided into two classes of cases. First, cases in which the property is in the actual or constructive possession of the court. Second, suits to enforce liens against specific property, to marshal assets, to administer trusts, to liquidate insolvent estates and other suits of a like nature where, in the progress of the litigation, it may be necessary for the court to assume possession and control of specific property. Palmer v. Texas, 212 U. S. 118, 129, 29 S. Ct. 230, 53 L. Ed. 435; Kline v. Burke Const. Co., 260 U. S. 226, 231, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077; Franz v. Franz (C. C. A. 8) 15 F.(2d) 797, 801, 802; Harkin v. Brundage, 276 U. S. 36, 43–45, 48 S. Ct. 268, 72 L. Ed. 457; Empire Trust Co. v. Brooks (C. C. A. 5) 232 F. 641, 643–646. In the former class of cases there is an interference with possession; and in the latter there is an interference with jurisdiction only.

In the latter class of cases, where the controversies in the two suits are substantially identical, the orderly administration of justice and the necessity of avoiding a conflict of jurisdiction require that the court which last acquired jurisdiction, although it be the first to acquire possession of the property involved in the litigation, shall surrender such possession, upon application, to the court of concurrent jurisdiction which first acquired jurisdiction of the controversy. Empire Trust Co. v. Brooks, supra, page 645 of 232 F.

On the other hand, where the issues in the subsequent suit are different from those involved in the first suit and the subject-matter is not identical, that is, where the two suits involve different controversies notwithstanding they relate to the same property, there can be no infringement of the jurisdiction of the court in which the first suit is pending by reason of the institution of the second suit in a court of concurrent jurisdiction. Under such circumstances, the court first acquiring possession of the property may retain it until the suit pending before it is determined. Empire Trust Co. v. Brooks, supra, pages 645, 646 of 232 F.; Havner v. Hegnes (C. C. A. 8) 269 F. 537, 540, 541; Knudsen v. First Trust & Sav. Bank (C. C. A. 9) 245 F. 81, 85.

In the case last cited, the court said:

"There is another principle enunciated by the courts and text-writers, namely, that where the controversy is not the same, that is, where the issues in one suit are different from those involved in another, and the subject-matter is not identical, there can be no infringement of jurisdiction as between the courts maintaining cognizance of the cases. This, it is maintained, rests on the ground that in such a case there is no conflict of jurisdiction as to the question or cause. In such cases, the first acquisition of the possession of the res dominates the authority to retain the same."

If the instant case be restricted to a suit for a judgment on the Ingram note, the subrogation of Ingram to the lien of the Campbell mortgage and the foreclosure of such mortgage, the issues will be different from the issues in No. 5259 and the subject-matter will be wholly different from the subject-matter of No. 5259. A decree foreclosing the Campbell mortgage will in no wise interfere with the jurisdiction of the state court in No. 5259 invoked by the answer and cross-petition of Robert Love seeking cancellation of the Ingram mortgage on the ground of fraud. It follows that the instant suit may properly proceed for the subrogation of Ingram to the lien of the Campbell mortgage and for the foreclosure thereof.

The decree is reversed with instructions to enter judgment against Polly Barnett, James Barnett, Minerva Jones and Robert Johnson as administrator of the estate of C. Jones for the amount due on the Ingram note for principal and interest, and against the defendants for the reinstatement of the Campbell mortgage and the subrogation of Ingram to the lien thereof and for the foreclosure of such mortgage to satisfy such indebtedness due Ingram. The costs will be taxed against appellees.