SUNSET PARK LAND COMPANY et al., Appellants, v. C. H. EDDY et al., Appellees; VAN DYCK HEATING & PLUMBING COMPANY et al., Appellants.

NOVEMBER 15, 1927.

REHEARING DENIED FEBRUARY 17, 1928.

*Howard L. Bump*, for appellants.

*Emmert & James*, for C. H. Eddy and Katherine Eddy, appellees.

*J. L. Witmer*, for Security Trust & Savings Bank, Trustee, appellee.

*Comfort & Comfort*, for W. F. Kucharo, appellee.

*Miller, Kelly, Shuttleworth & McManus*, for J. Dillard Hall, Trustee, U. S. Fidelity & Guaranty Company, Des Moines National Bank, appellees.

*Howe & Howe*, for Central Trust Company, appellee.

ALBERT, J.—To the end that a fair view of the questions involved herein may be had, we gather the following facts from the record:

In the fall of 1922, one C. H. Eddy agreed to purchase from plaintiff, the Sunset Park Land Company, real estate known as Lots 29 and 30, Sunset Park Addition to the city of  Des Moines, upon which he proposed to construct an apartment house consisting of some 54 apartments. He seems to have had no money with which to pay for the lots or for the building to be constructed thereon. He let the contract to one W. F. Kucharo, to construct this building.

To raise money for the purpose of paying the contractor, Eddy entered into an arrangement with the Old Colony Bond Company, to borrow from it the sum of $120,000 as the first loan on said property, the same to be in the form of a bond issue. On November 3, 1922, he also made a second deed of trust to the Security Trust & Savings Bank, to secure a bond issue of $78,000; and it is the latter issue of bonds that is involved in this litigation. Of this $78,000 bond issue, $18,000 was to be used for payment of the lots purchased, and certain other expenses incident to the construction of the building, and $60,000 thereof was to be accepted by Kucharo as part payment

on the building contract. The Old Colony Bond Company was unable to carry out its part of the agreement, and this necessitated the negotiation of a new loan, after the Old Colony Company had canceled its deed of trust of record. The Central Trust Company was trustee in the new deed of trust for $150,000, which was carried through successfully; and this amount, less commission, was paid to Kucharo.

Prior to the time the trust deed was made to the Central Trust Company, which was dated June 1, 1923, Eddy and wife made a deed of this property to Kucharo; and about the same time, a contract was made between them, in which Eddy was given the right to sell or purchase the $60,000 in bonds above referred to at any time within two years; and if he did so, and turned the proceeds thereof over to Kucharo, Kucharo was to deed back the property. This Eddy never did, and Kucharo later served on him a notice of forfeiture, cutting out all of Eddy's rights under the contract. By special arrangement the trust deed to the Central Trust Company, although made and executed later than the $78,000 mortgage and trust deed, was, by recitation and agreement of all parties, made a first lien. At the time of the making of the Central Trust Company deed, it was demanded, in addition thereto, that Kucharo put up a bond for the completion of the building. This bond was furnished by the United States Fidelity & Guaranty Company. It appears that Kucharo was engaged in the construction of other buildings in the city, and this guaranty company was on his bonds on other work. Although his contract had not been completed, Kucharo quit work on the Eddy Apartments in October, 1923, and the guaranty company furnished the money to complete the apartments, in an amount of something over $39,000. Kucharo became financially distressed in October, 1923, and the guaranty company demanded security from him, and Kucharo and his wife trust-deeded all of their property, both real and personal, to one J. Dillard Hall, as trustee, for the benefit of such guaranty company, and to protect and secure the Des Moines National Bank, and turned over said property to said trustee, among which were the second mortgage bonds, which were originally in the sum of $60,000, but which had been reduced to $57,650 by reason of the payment of the contract debt to the Des Moines Building Material Company in the sum of

$2,350 by delivery of bonds. Hall took possession of said apartment building, and on its completion rented and cared for the same. At the time of the commencement of this suit, these bonds, in the amount of $78,000, were held as follows:

| | |
|---|---:|
| Sunset Park Land Co. | $6,900.00 |
| Northern Trust & Savings Bank | 600.00 |
| Van Dyck Heating & Plumbing Co. | 2,000.00 |
| Vorse, Kraetsch & Kraetsch | 2,500.00 |
| Bachman Steel Metal Works | 400.00 |
| U. S. Fidelity & Guaranty Co. | 57,650.00 |
| Persons not parties to this action | 7,950.00 |

The Van Dyck, Vorse, and Bachman companies all intervene in this action.

What may be designated as "the first mortgage bond" is the issue of $150,000, only incidentally involved in this action. The district court held that it constituted a first lien upon the property, and of this no complaint is made, and no further attention need be given to it.

The trustee under the second deed of trust, to wit, the $78,000 loan, refused to prosecute this action, and the plaintiffs brought action for foreclosure of the trust deed. The expenditure in the construction of the building was $218,079.60.

At the time the contract aforesaid was made between Kucharo and Eddy, on May 17, 1923, the $60,000 in bonds had been delivered to Kucharo, and when Kucharo trust-deeded his property to Hall for the benefit of the guaranty company, he turned over the sum of $57,650 of said bonds, and these bonds were transferred by Hall to the guaranty company on account of advances made by that company to Kucharo.

Any other facts necessary to an understanding of the case will be stated as the opinion progresses.

The first claim by appellants is that, when Kucharo had this $60,000 in bonds in his possession, and Eddy and wife conveyed the property to him, the bonds were thereby merged and canceled by operation of law, and hence are not entitled to share in this foreclosure. The doctrine of merger is quite well defined in the case of *Moore v. Olive*, 114 Iowa 650, where a mortgagee purchased the outstanding title. We there said:

" * * * merger, as a rule, depends upon the intention of the owner, and if there be no evidence of such intent, equity

will not treat a mortgage as merged when it is to the interest of the owner, or those claiming under him, that it should continue in force. * * * [Citing cases.] The doctrine is of equitable origin, and is governed by equitable considerations. In the instant case it clearly appears that Olive did not intend a merger when he purchased the Lowell mortgage. Hence there was no merger, and plaintiffs are not entitled to a decree unless they show that under the facts disclosed by the record the Lowell mortgage should be treated as extinguished by reason of the foreclosure proceedings," etc.

The facts in this case show that the deed from Eddy to Kucharo, by reason of the contract made at the same time, did not convey a complete title to Kucharo, and Kucharo trust-deeded these bonds before his contract with Eddy ripened into full title. It is elementary under the theory of merger that the different interests center in one party, and when taken altogether, constitute a complete title. This being the rule, it cannot be said or held by us that, when Eddy made the deed to Kucharo, the title then merged, and that by reason thereof the bonds in fact were canceled and of no further force, effect, or value. We say this by application of the general rule, not passing upon the question, however, whether these bonds held by Kucharo created any interest whatever in the property itself. The doctrine of merger nearly always applies wholly to the concentration of interests in real estate.

As to the incidental thought that, when the bonds were in the hands of the United States Fidelity & Guaranty Company, and the deed was procured from Kucharo, there was then a merger, what we have already said applies. Further than this, the evidence shows that the deed in possession of the United States Fidelity & Guaranty Company was a deed in blank, and was procured for the purpose of assuring purchasers at the foreclosure sale that they could get an immediate title to the property if they would bid on it. It would not have been to the interest or benefit of either Kucharo or the United States Fidelity & Guaranty Company to have these titles merged, under the circumstances, but would have been to the disadvantage of both; hence there was no merger here. This was the only question urged upon our attention, so far as the main case is concerned.

The next question raised involves a somewhat further ref-

erence to the record: When J. Dillard Hall was made trustee of the property for the benefit of the United States Fidelity & Guaranty Company and the Des Moines National Bank, as heretofore stated, he took possession of the property, collected the rents and profits, paid the expenses, and, on the appointment of a receiver, he, as trustee, turned over to himself, as receiver, the sum of $1,200, and as such receiver, proceeded to manage the Eddy Apartments, collect the rent, pay the expenses, etc. His appointment by the court was with the consent of all of the parties to this litigation. It is to be remembered that this house was being conducted as an ordinary apartment house, and needed care and attention during all of the time. The receiver, as such, filed his reports, which show that the total amount of money received by him was less than the amount expended; and the court, in its order of distribution, provided for certain payments out of the proceeds of said sale, and further provided for the payment of charges for necessary improvements and upkeep incurred by the receiver, either prior to the date of its decree or during the period of possession by the receiver, after the exhaustion of the funds which came into his hands after the entry of the decree, and that the balance should be applied pro rata on all bonds outstanding under the trust deed hereby foreclosed.

The objections and complaints as to the report of the receiver are to certain amounts disbursed by said receiver, consisting of certain expenditures for completing the construction of said building, in the sum of $3,178.36, taxes paid, in the sum of $4,315.12, and payments on the first mortgage, totaling $16,800. The excess of expenditures over receipts by said receiver was in the sum of $5,687.02; and, under the above order of the court, this would be deducted from the amount which the property brought at the foreclosure sale, to wit, $10,000.

In response to all of these complaints it may be said, first, that the expenditures were either made under order of the court or, after the expenditure was made, the court made an order approving the same. It is to be remembered that this man, acting as receiver, was in fact an officer of the court, and had a right to apply to the court for directions as to what he should do in the care and upkeep of this property, and when the court gave him an order to do anything in relation thereto, he was entitled

438

to carry out such order, and be protected in so doing. Again, the district court in this proceeding approved this report, and anything that had not been approved at a prior date was approved by his ruling herein.

It appears also that the expenditures for some small details in the completion of the building to make it habitable and useful for the tenants were necessary, and we see no reason why their allowance was not properly approved by the court. The contract under which the first trust deed was made provided for the monthly payments thereon in the sum of $1,225 per month, to apply on interest, or by way of payment on the principal of $150,000 and mortgage. When the receiver took charge, in pursuance of that contract, he made these monthly payments, in all amounting, as above stated, to $16,800. His action was approved, and further than this, it inured to the benefit of the holders of the second mortgage bond, because it prevented foreclosure and reduced the primary indebtedness accordingly; and, of course, every reduction of the primary indebtedness would tend to increase the amount that would be bid under the foreclosure sale of the second mortgage.

What has just been said applies to the taxes, which were also paid by said receiver.

One other item is a salary of $150 a month paid to Mrs. Katherine Reynolds by the receiver. It is quite apparent from the record that the care of this property demanded the attention of one person. The receiver could not give his attention to it in person, and of necessity had to hire someone to look after it. He employed this woman at $150 per month, and paid her, in all, about $1,800 for her services in looking after the property. The amount claimed and allowed to the receiver for his services in the instant case was the nominal sum of $200. We can see no reason why complaint should be made of this item. It was a necessity, and the payments from time to time were approved by the court.

We find no error in the action of the district court.— *Affirmed*.

EVANS, C. J., and STEVENS, MORLING, and WAGNER, JJ., concur.